980 F.2d 624
 The HOUSING AUTHORITY OF the CITY OF FORT COLLINS, also
known as Ft. Collins Housing Authority, also known
as Housing Authority of the City of Ft.
Collins, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 90-1005.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 24, 1992.
 
 Arthur E. March, Jr. of March & Myatt, P.C., Fort Collins, Colo. (James Bradford March of March & Myatt, P.C., and Gregory C. Denton, with him, on the brief), for plaintiff-appellant.
 Paula M. Ray, Asst. U.S. Atty., Denver, Colo. (Michael J. Norton, U.S. Atty., Howard M. Schmeltzer, Asst. Gen. Counsel for Litigation, and Richard Price, Trial Atty., U.S. Dept. of Housing & Urban Development, Washington, D.C., with her, on the brief), for defendant-appellee.
 Before SEYMOUR, HOLLOWAY and ANDERSON, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 The Housing Authority of the City of Fort Collins, Colorado (FCHA), as plaintiff-appellant, appeals from a summary judgment entered by the district court in favor of the defendant-appellee United States. The judgment was entered in an action removed to the district court by the government from a state court of Colorado. That state court action had sought to quiet title to real property of the FCHA. FCHA timely appealed the judgment adverse to it.
 
 
 2
 * The controversy arose following the enactment of Section 3004 of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 42 U.S.C. § 1437b(c)(1). That section of COBRA provides for the forgiveness of Housing Authority indebtedness created under the Housing Act of 1937, 42 U.S.C. § 1437. FCHA was formed by the City of Fort Collins in accordance with the Colorado Housing Authorities Law, CRS § 29-4-201, et seq.
 
 
 3
 Under the Housing Act of 1937, the Secretary of the United States Department of Housing and Urban Development (HUD) is authorized to "make loans or commitments to make loans to public housing agencies to help finance or refinance the development, acquisition, or operation of lower income housing projects by such agencies." 42 U.S.C. § 1437b(a). In connection with such financing, it has been the practice of HUD to require the execution of various loan notes, and at least one Annual Contributions Contract (ACC). It was not, however, anticipated that a Public Housing Authority would make any payments on the loans since the government agreed to provide debt service subsidies, called annual contributions, pursuant to Section 5 of the Housing Act of 1937, 42 U.S.C. § 1437c(a). Under this procedure the FCHA did not have to pay any debt service obligations repaying portions of the loans which it owes the government. Thus, while the arrangement was denominated as a loan, HUD was actually making grants to Public Housing Authorities such as FCHA. FCHA in actuality then never repaid the loans to HUD and instead only received credit equal to the payments owed to HUD.
 
 
 4
 Under the ACC executed by FCHA, obligations were imposed on FCHA other than repayment. Pursuant to Section 420 of the ACC, FCHA obligated itself to accept a HUD lien on each of the projects covered by the ACC. The ACC also created obligations which a Public Housing Authority like FCHA was required to perform in operating housing. Section 202 of the ACC requires that the properties be maintained as low-income housing. Section 204 establishes limits on the rents that can be charged, and Section 12 of the ACC contains a prohibition against discrimination in housing. Section 304 assures equal employment opportunities in relation to the housing.
 
 
 5
 In April 1986, Congress enacted Section 3004 of COBRA, which abolished the fiction that Public Housing Authorities received loans which must be repaid. Section 3004 provides:
 
 
 6
 At such times as the Secretary may determine, and in accordance with such accounting and other procedures as the Secretary may prescribe, each loan made by the Secretary under subsection (a) of this section [42 U.S.C. § 1437b] that has any principal amount outstanding or any interest amount outstanding or accrued shall be forgiven; and the terms and conditions of any contract, or any amendment to a contract, for such loan with respect to any promise to repay such principal and interest shall be canceled. Such cancellation shall not affect any other terms and conditions of such contract, which shall remain in effect as if the cancellation had not occurred. This paragraph shall not apply to any loan the repayment of which was not to be made using annual contributions, or to any loan all or part of the proceeds of which are due a public housing agency from contractors or others.
 
 
 7
 42 U.S.C. § 1437b(c)(1) (emphasis added). This controversy concerns principally the portion of Section 3004 emphasized above and the Section's provisions that principal and interest outstanding or accrued shall be forgiven and that the terms and conditions of any contract with respect to any promise to repay such principal and interest shall be cancelled.
 
 
 8
 Due to these provisions, FCHA argues that the ACC terminated by its own terms upon forgiveness of the loans because Section 518 of the contract provides for termination "[u]pon payment in full of all indebtedness of the [FCHA]," I R.App. 4. FCHA says that the debt forgiveness provided by COBRA was the equivalent of "payment in full" within the meaning of Section 518. Hence, with the cancellation of the repayment obligation, FCHA maintains that the other obligations created under the ACC, and which were to last for 40 years from their creation, were also extinguished. The government, on the other hand, maintains that the obligations in addition to repayment and the liens on the property of FCHA remain in full force and effect.
 
 II
 
 9
 This suit was brought for quiet title relief to remove the government's liens from the properties. The government was named as a defendant in the state court action as permitted by 28 U.S.C. § 2410. The government removed the case to the federal district court pursuant to 28 U.S.C. § 1444.
 
 
 10
 Upon removal of the case to the federal district court, FCHA amended its complaint to include a claim for a declaratory judgment that all the terms and conditions of the ACC executed in connection with the financing of the projects were, along with the government's liens, extinguished as a result of the loan forgiveness by COBRA. The government moved for summary judgment.
 
 
 11
 After hearing argument on the motion, the district judge made her ruling orally. III R. 2-5. She relied upon Bowen v. Agencies Opposed to Social Security Entrapment, 477 U.S. 41, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986). The judge reasoned that contractual arrangements, including those to which the sovereign itself was a party, remain subject to subsequent legislation. The public housing program involved here was viewed as a social welfare program similar to the Social Security program involved in Bowen v. Agencies. The judge said that the same reasoning applies here. There were two very strong positions taken here, that of the plaintiff FCHA for cancellation of the liens and additional obligations, and the interpretation of the statute that such additional obligations continue. The judge noted the position of HUD that its implementation of the statute steers a course between two extremes.[1]
 
 
 12
 The judge concluded that the government's position made good sense; that the statutory action of COBRA was not arbitrary and irrational; that the 40 year limitation on the additional obligations and the liens was fair; and that the statute meant what it said in providing that the cancellation of the indebtedness "shall not affect any other term and condition of such contract, which shall remain in effect as if the cancellation had not occurred." III R. 3-4. Concluding that the statute was not arbitrary, capricious or irrational, the court granted the government's motion for summary judgment.
 
 III
 
 13
 We review the district court's grant of summary judgment de novo. Eaton v. Jarvis Products Corp., 965 F.2d 922, 925 (10th Cir.1992) All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party. Anderson v. Dept. of Health & Human Services, 907 F.2d 936, 946-47 (10th Cir.1990). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 14
 Here the challenge of FCHA to the summary judgment against it is not premised on the claim that there is a genuine issue of material fact. Instead, FCHA argues that the government was not entitled to judgment as a matter of law. This legal challenge is based on four principal arguments.
 
 
 15
 First, FCHA maintains that the government does not have the constitutional power to regulate housing projects of a state housing authority; that in adopting the Housing Act of 1937, Congress used its spending power and exercised its authority through grants conditioned on the recipient meeting congressional requirements such as the obligations of the ACC undertaken by FCHA; and that since the loans here have been forgiven, the government no longer has any obligations it can enforce against FCHA pursuant to the Housing Act of 1937. Brief of Appellant at 15-19. Second, the continued imposition of encumbrances and regulations on the property of FCHA is said to constitute an unlawful taking without just compensation and a violation of the Due Process Clause of the Fifth Amendment. Third, FCHA argues that COBRA and its provision for forgiving the debt of the Housing Authorities was enacted for a budgetary rather than a social purpose; the reduction of governmental expenditures as accomplished by COBRA was not the exercise of a sovereign power which could justify the abrogation of a government contract. Id. at 24-25. Fourth, FCHA contends that the government is required by Colorado law to cancel and return the promissory notes and release the declarations of trust as mandated by Colorado Revised Statutes § 38-35-124 within 90 days after the satisfaction of the indebtedness, which has occurred here. We are unable to agree with the arguments of FCHA and accordingly affirm.
 
 A.
 
 16
 At the outset we reject FCHA's argument that since COBRA's § 3004 has "forgiven" the loan indebtedness, the obligations of the ACC cannot be enforced because section 518 of the contract provides for termination "[u]pon payment in full of all indebtedness of [FCHA]." I R.App. 4. This contention runs counter to the plain command of § 3004 of COBRA dealing with the effect of the debt cancellation: "Such cancellation shall not affect any other terms and conditions of such contract, which shall remain in effect as if the cancellation had not occurred." Moreover, HUD's Statement of Policy, issued following the enactment of § 3004, explains clearly that the government's loan forgiveness program neither "extend[s] nor abbreviate[s]" the term of any existing ACC. Instead "the ACC [will] run to the full term at which it otherwise would have terminated had there not been cancellation of the loan." 53 Fed.Reg. 31274, 31276 (1988).
 
 
 17
 We are also not persuaded by the constitutional challenge of FCHA to the portion of § 3004 continuing the obligations of FCHA through the 40 year term of the ACC. Article I, § 8, cl. 1 of the Constitution empowers Congress to "lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." Absent some independent constitutional bar, the Spending Clause enables Congress as an incident to that power to "attach conditions on the receipt of federal funds, and [Congress] has repeatedly employed the power 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.' " South Dakota v. Dole, 483 U.S. 203, 206, 107 S.Ct. 2793, 2795, 97 L.Ed.2d 171 (1987) (quoting Fullilove v. Klutznick, 448 U.S. 448, 474, 100 S.Ct. 2758, 2772, 65 L.Ed.2d 902 (1980) (Opinion of Burger, C.J.)). And long ago the Supreme Court resolved a longstanding debate over the scope of the Spending Clause by holding that "the power of Congress to authorize the expenditure of public moneys for public purposes is not limited by the direct grants of legislative power found in the Constitution." United States v. Butler, 297 U.S. 1, 66, 56 S.Ct. 312, 319, 80 L.Ed. 477 (1936); South Dakota v. Dole, 483 U.S. at 207, 107 S.Ct. at 2796.
 
 
 18
 We are satisfied that the obligations imposed on FCHA under the authority of the Housing Act of 1937 in connection with the receipt of federal funds, and continued by COBRA's Section 3004 beyond the forgiveness of the indebtedness, were well within the "broad policy objectives" that Congress could validly decide to further. Moreover, the imposition of those obligations in no way runs afoul of any "independent constitutional bar" to the conditional grant of federal funds. South Dakota v. Dole, 483 U.S. at 209, 107 S.Ct. at 2797.
 
 
 19
 And we see no plausible ground for holding that this exercise of the power to condition grants of federal funds violates any of the other limitations on such an exercise of power under the Spending Clause recognized by the Supreme Court: that such an exercise of the power must be in pursuit of the general welfare; that such conditions be stated unambiguously; and that such conditions might be illegitimate if they are unrelated to the federal interest in particular national projects or programs. South Dakota v. Dole, 483 U.S. at 207, 107 S.Ct. at 2796. We fully agree with the view of the district judge here that "public housing certainly is a social welfare program for the public benefit...." III R. 2. The obligations placed on FCHA by Section 420 of the ACC such as maintenance of the properties as low-income housing, limitation on rents that can be charged, and the prohibition against discrimination in housing, all are obviously valid objectives furthering the general welfare.
 
 
 20
 FCHA argues, however, that COBRA was enacted for a budgetary purpose rather than a social purpose and that such a measure violates the principles of Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). Brief of Appellant at 24-25. There the Court struck down as violative of the Due Process Clause a statute enacted solely to relieve the government of payment obligations otherwise owed under War Risk Insurance policies. Id. at 580, 54 S.Ct. at 844 ("To abrogate contracts, in the attempt to lessen government expenditure, would be not the practice of economy, but an act of repudiation").
 
 
 21
 We feel that Lynch is distinguishable from the instant case. COBRA serves an important social purpose--continuing the maintenance of low-income housing--and it was not enacted for the illegitimate legislative purpose of "repudiat[ing] [the government's] own debts, which constitute 'property' to the lender, simply in order to save money." Bowen v. Agencies, 477 U.S. at 55, 106 S.Ct. at 2398; Peterson v. United States Dept. of Interior, 899 F.2d 799, 808 n. 16 (9th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 567, 112 L.Ed.2d 574 (1990). Indeed, it defies common sense to claim that Congress, by forgiving the loan indebtedness, acted to repudiate its own debts and thereby save money. The fact that loan forgiveness has the effect of promoting fiscal efficiency in the administration of HUD's low income housing program in no way equates with the fiscally motivated contractual repudiation at issue in Lynch. COBRA does not effectuate budgetary savings by repudiating the government's own contractual obligations, nor do any administrative savings come at the expense of FCHA. Compare Alpine Ridge Group v. Kemp, 955 F.2d 1382, 1387-88 (9th Cir.) ("HUD is unable to present any argument explaining section 801 [of the HUD Reform Act] as anything other than Congress' attempt to save resources and money by legislating a compromise to its disputes with the owners."), cert. granted, --- U.S. ----, 113 S.Ct. 490, 121 L.Ed.2d 429 (1992).
 
 
 22
 In sum, we hold that Congress validly exercised its powers under the Spending Clause in requiring the Housing Authorities to accept the conditions of the ACC furthering public housing objectives on receipt of funds for their projects. Furthermore, in COBRA's Section 3004 preservation of the conditions, Congress validly exercised authority ancillary to its spending power and to its power to condition grants for public housing. This authority properly lies within the power conferred on Congress "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers...." Article I, § 8, cl. 18. Thus we are unpersuaded by the argument that there is no constitutional foundation for Congress' exercise of authority in the Housing Act of 1937 and in COBRA which is challenged here.
 
 B.
 
 23
 We turn to FCHA's arguments that COBRA's Section 3004 effected a due process violation and an unconstitutional taking of property rights of FCHA without just compensation. More specifically the contention is that FCHA's vested right to termination of the contract and its burdens on FCHA, when the debt was satisfied, was destroyed by COBRA; thus FCHA's contract rights have been impaired, contrary to principles recognized in Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). Brief of Appellant at 22-23. FCHA says that here, unlike the situation in Bowen v. Agencies, neither the ACC nor the Housing Act of 1937 contained a reservation of a right for the government to amend the contract; rather the ACC contained a proviso requiring mutual consent to make an amendment; thus the district judge's ruling allowing a unilateral amendment of the contract by the government permitted a taking of private property without just compensation in violation of the Fifth Amendment Due Process Clause. Brief of Appellant at 23.
 
 
 24
 Thorpe is not persuasive support for FCHA's arguments. It rejected a Fifth Amendment claim under the Due Process Clause. The Court held that enforcement of a HUD circular's requirement of notice to tenants by local housing authorities of the reasons for an eviction before eviction is carried out was not an invalid impairment of the Authority's existing contract rights and its lease agreement with the tenant. The Court said that the obligations of each of the contracts can be impaired in a constitutional sense only "by a law which renders them invalid, or releases or extinguishes them ... [or by a law] which without destroying [the] contracts derogate[s] from substantial contractual rights." Thorpe, 393 U.S. at 279, 89 S.Ct. at 524 (quoting Home Bldg. & Loan Assn. v. Blaisdell, 290 U.S. 398, 431, 54 S.Ct. 231, 237, 78 L.Ed. 413 (1934)).
 
 
 25
 We feel that the due process principles noted in Thorpe have not been violated. FCHA relies on Section 518 of the ACC and FCHA's purported right thereunder to termination of its obligations as to maintenance of the low-income housing upon "payment" of its obligations. We agree with the government that this does not rise to the level of a property right whose loss would constitute a taking because Congress retained the power to alter or modify such contract terms. This power to amend does not arise from a reservation of that power in the Housing Act of 1937 or the agreements involved here, but from the general reservation of such regulatory authority recognized in Bowen v. Agencies. Moreover, as the Court said in Bowen v. Agencies, 477 U.S. at 55, 106 S.Ct. at 2398, the "contractual right" at issue bears little if any resemblance to rights held to constitute property within the meaning of the Fifth Amendment. It was neither a debt of the government nor an obligation to provide benefits under a contract for which the obligee paid a monetary premium, as in Lynch. "Rather, the provision simply was part of a regulatory program over which Congress retained authority to amend in the exercise of its power to provide for the general welfare." Bowen v. Agencies, 477 U.S. at 55, 106 S.Ct. at 2398. The asserted right of FCHA appears to us to be one "that lies in the periphery where vested rights do not attach." F.H.A. v. The Darlington, Inc., 358 U.S. 84, 90, 79 S.Ct. 141, 145, 3 L.Ed.2d 132 (1958).
 
 
 26
 We are persuaded that FCHA's claim of a Fifth Amendment violation is untenable. Citing Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 147-148, 102 S.Ct. 894, 906-907, 71 L.Ed.2d 21 (1982), Bowen v. Agencies, 477 U.S. at 52, 106 S.Ct. at 2396 concluded:
 
 
 27
 [W]e have emphasized that '[w]ithout regard to its source, sovereign power, even when unexercised, is an enduring presence that governs all contracts subject to the sovereign's jurisdiction, and will remain intact unless surrendered in unmistakeable terms.' Ibid. Therefore, contractual arrangements, including those to which a sovereign itself is party, 'remain subject to subsequent legislation' by the sovereign.
 
 C.
 
 28
 Finally, FCHA contends that as a result of COBRA's loan forgiveness, the government's liens on the FCHA housing projects must, as a matter of Colorado law, be released. FCHA relies on CRS § 38-35-124 which provides in part:
 
 
 29
 [W]hen all indebtedness ... secured by a lien on real property has been satisfied, unless the debtor requests in writing that the lien not be released, the creditor or holder of the indebtedness shall, within ninety days after the satisfaction of the indebtedness and receipt from the debtor of the reasonable costs of procuring and recording the release documents, record with the appropriate clerk and recorder the documents necessary to release or satisfy the lien of record or, in the case of an indebtedness secured by a deed of trust to a public trustee, file with the public trustee the documents required for a release....
 
 
 30
 (Emphasis added.)
 
 
 31
 The government claims the foregoing section is inapplicable because the government's loan forgiveness does not constitute "satisfaction" of indebtedness within the meaning of the statute. Appellee's Brief at 24 n. 16. Alternatively, the government argues that under the Supremacy Clause of Article VI, cl. 2 of the Constitution, the Colorado statute is preempted by COBRA's Section 3004 because enforcement of the state statute "would directly conflict and defeat the clear expression of Congress' authority that debt forgiveness pursuant to Section 3004 not effect [sic] the validity of the remainder of the ACC beyond the actual debt liability." Id.
 
 
 32
 Without relying on the government's interpretation of the term "satisfaction" as used in § 38-35-124, which may be problematic, see Colorado Herald Pub. Co. v. Neuhaus, 117 Colo. 172, 184 P.2d 1011, 1013 (1947), we do agree with the government that release of the liens would conflict with the language and intent of COBRA's Section 3004 and that the Colorado statute is preempted by federal law. Under the Supremacy Clause, state laws that "interfere with, or are contrary to the laws of [C]ongress, made in pursuance of the [C]onstitution" are preempted. Gibbons v. Ogden, 22 U.S. (9 Wheat) 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.). In Wisconsin Public Intervenor v. Mortier, --- U.S. ----, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), the Supreme Court held that the Federal Insecticide, Fungicide, and Rodenticide Act does not preempt the regulation of pesticides by local governments. The Court noted that the preemption question "in the first instance turn[s] on congressional intent...." Id. --- U.S. at ----, 111 S.Ct. at 2481. However,
 
 
 33
 [a]bsent explicit pre-emptive language, Congress' intent to supersede state law in a given area may nonetheless be implicit if a scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' if 'the Act of Congress ... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or if the goals 'sought to be obtained' and the 'obligations imposed' reveal a purpose to preclude state authority....
 
 
 34
 Even when Congress has not chosen to occupy a particular field, pre-emption may occur to the extent that state and federal law actually conflict. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
 
 
 35
 --- U.S. at ---- - ----, 111 S.Ct. at 2481-82 (citations omitted). Accord Hatfield v. Burlington Northern R. Co., 958 F.2d 320, 321 n. 1 (10th Cir.1992) (holding adoption by Secretary of Transportation of Manual on Uniform Traffic Control Devices issued under Federal Railroad Safety Act preempted state common law standards of care for grade crossings).[2]
 
 
 36
 We believe that release of the government's liens on the FCHA housing projects in accordance with the Colorado statute would directly conflict with COBRA's requirement that the government's loan cancellation "shall not affect any other terms and conditions of such contract, which shall remain in effect as if the cancellation had not occurred," 42 U.S.C. § 1437b(c)(1), and thus would "stand[ ] as an obstacle to the full purposes and objectives of Congress." Mortier, --- U.S. at ----, 111 S.Ct. at 2482.
 
 IV
 
 37
 No error has been demonstrated in the district judge's ruling and the summary judgment is accordingly
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 Specifically, the implementing regulations referred to by the judge provide:
 [T]he Department interprets the loan forgiveness legislation as providing for the ACC to run to the full term at which it otherwise would have terminated had there not been cancellation of the loan. This Statement of Policy is intended to make clear that the originally contracted for term is neither extended nor abbreviated by virtue of loan forgiveness under the ACC.
 
 
 [53]
 Fed.Reg. 31274, 31276 (1988)
 
 
 [2]
 We are mindful that the Supreme Court has granted certiorari in Easterwood v. CSX Transportation, Inc., 933 F.2d 1548 (11th Cir.1991), cert. granted, CSX Transportation, Inc. v. Easterwood, --- U.S. ----, 112 S.Ct. 3024, 120 L.Ed.2d 896 (1992) (Nos. 91-790 and 91-1206), a case dealing with the same preemption ruling addressed in Hatfield