STATE OF KANSAS, Plaintiff,

v.

UNITED STATES of America,
et al., Defendants.

No. 97–4256–RDR.

United States District Court,
D. Kansas.

Oct. 9, 1998.

capacity as Secretary of Health & Human Services, defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Plaintiff, the State of Kansas, challenges the constitutionality of amendments to the Child Support Enforcement Program, 42 U.S.C. §§ 651–669b, enacted as part of the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) of 1996, Pub.L. No. 104–193, 110 Stat. 2105 (1996). Plaintiff contends that these provisions of PRWORA are unconstitutional as exceeding Congress' authority under Article I, Section 8 of the United States Constitution, and as violating dual sovereignty and the Tenth Amendment to the United States Constitution.

The defendant seeks dismissal on two grounds. First, the defendant argues that the State of Kansas lacks standing to bring this action. Second, the defendant asserts that the State of Kansas cannot prevail on the merits. Having heard oral argument on the defendant's motion to dismiss, the court is now prepared to rule.

## BACKGROUND

The federal government and the states have been involved in a cooperative effort to make monetary payments to financially needy families, including children deprived of parental support, since 1950. As the years have passed, the federal government has increased the requirements imposed upon the states.

In 1975, the federal government became a major player in child support programs with the passage of the Child Support Enforcement (CSE) Program. *See* 42 U.S.C. §§ 651–669. The Program was enacted to locate absent parents, establish paternity, and enforce child and spousal support. 42 U.S.C. § 651. The Office of Child Support Enforcement within the United States Department of Health and Human Services oversees the CSE program. The federal government funds 66 percent of state CSE program operating costs, 42 U.S.C. § 655(a)(2), and 90 percent of state expenditures relating to the planning, design, devel-

M.J. Willoughby, John W. Campbell, Office of Attorney General, Topeka, KS, for State of Kansas, plaintiff.

Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, Sheila M Lieber, U.S. Department of Justice, Frank W Hunger, U.S. Department of Justice, Victoria J. Rosenthal, U.S. Department of Justice, Washington, DC, for United States of America, HHS Dept of, Secretary of Health and Human Services, Donna Shalala, in her official

opment, installation or enhancement of an automatic data processing information retrieval system. 42 U.S.C. § 655(a)(3).

PRWORA, popularly known as "welfare reform," made sweeping changes in the laws regulating the poor. It abolished Aid to Families with Dependent Children (AFDC) and created the Temporary Assistance for Needy Families (TANF) program. AFDC had provided cash payments to indigent families based upon national eligibility standards and a uniform federal definition which created an entitlement for recipients. TANF eliminated national eligibility standards and abolished the national entitlement to aid. Under the new TANF program, states are given federal block grant money with the authority to design their own public assistance programs. In exchange, the states must fulfill certain requirements, including meeting specific goals in moving welfare recipients into work and toward self-sufficiency. In addition, the states are required to comply with a variety of federal regulations.

Title III of the PRWORA details a mandatory child support collection structure that must be established and operated if a state is to remain eligible for the full TANF grant. Key features of Title III include the creation of automated state systems for entry of all support orders and of employees who obtain new jobs; authority for income withholding; a requirement that states cooperate with the federal government and with other states in matching employees to outstanding support orders; mechanisms for speedy enforcement of support orders; and the enactment of certain laws and legal conditions, including the Uniform Interstate Family Support Act and the conferral of statewide jurisdiction on agencies and courts empowered to act in paternity and support proceedings. *See* 42 U.S.C. § 666.

The amendments contained in PRWORA were made with the intent of "establishing uniform State tracking procedures; taking strong measures to establish paternity and funding; and ensuring tough child support enforcement." H.R.Rep. No. 104–651 at 1324. The amendments were effective July 1, 1997, except that changes that had to be approved by state legislatures become effective no later than the first day of the first calendar quarter beginning after the close of the first regular session of the state legislature subsequent to August 22, 1996. 42 U.S.C. § 654 note.

A state is not required to participate in the CSE program. However, pursuant to PRWORA, a state that elects to receive the federally-funded block grant under the TANF program must comply with the statutory requirements and the regulations promulgated by the Secretary of HHS. 42 U.S.C. §§ 602(a)(2), 603. A state that operates a CSE program risks the loss of CSE funding if it fails to conform to the requirements established by the Secretary. 42 U.S.C. §§ 609(a)(5) and (a)(8).

Within the federal mandates, states have broad discretion to establish the specific rules and procedures for the operation of their child support enforcement programs. Federal law may require adoption of laws on particular topics, but states generally determine the specific procedures used. For example, states maintain the responsibility for establishing any guidelines on the amount of support to be awarded, 42 U.S.C. § 667, or the amount of an individual's salary that may be garnished to meet support obligations, 42 U.S.C. § 666(b). In addition, if a state demonstrates to the Secretary that the enactment of any law or procedure required under 42 U.S.C. § 666 will not increase the effectiveness and efficiency of the state CSE program, the Secretary may exempt the state from such requirement. 42 U.S.C. § 666(d).

## STANDING

The defendant contends that the court lacks jurisdiction because the State of Kansas does not have standing to bring this action. In the complaint, the State alleges the following concerning the issue of standing:

> The State of Kansas has standing to bring this declaratory judgment action because of the injury to its sovereignty as a State caused by the challenged federal statute. Further, any State, including the State of Kansas, which is deemed by the federal defendants to be not in compliance with the provisions of Title III of [PRWORA] is subject to federal withholding of approximately $29 million, representing nearly the entire budget for State-provided child sup-

port enforcement services for State citizens, and funds in excess of $101 million, representing aid to Kansas children and families in need, causing injury to the State and its interests.

■ The question of standing involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). To satisfy the standing requirements of Article III to the United States Constitution, plaintiff must show (1) that it has suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there is a causal connection between the injury and the conduct complained of— the injury must be fairly traceable to the challenged action of the defendant; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The burden of demonstrating standing rests with the party invoking federal jurisdiction. *Id.* at 561, 112 S.Ct. 2130.

■ In considering the issue of standing on a motion to dismiss, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *State of Utah v. Babbitt*, 137 F.3d 1193, 1204 (10th Cir.1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In addition, the court must presume that general allegations embrace those specific facts that are necessary to support the claim. *Id.*

The defendant limits its standing argument to a claim that plaintiff has not met the causation requirement. The defendant points out that the plaintiff is challenging Congress' enactment of the amendments to the CSE program, but that these amendments do not constitute the cause of plaintiff's alleged injury because plaintiff is subject to the challenged federal mandates only as a result of the State of Kansas' decision to participate in, and receive federal funding pursuant to, the TANF program. Thus, the

defendant asserts that standing is lacking because the plaintiff's injury is self-inflicted.

■ Neither side was able to provide any cases that had considered this precise issue, despite the fact that there are dozens of cases where states have challenged the constitutionality of various federal laws under the Tenth Amendment and the Spending Clause. The court is persuaded that the circumstances of this case indicate that the State has standing to pursue this action. The purpose of the causal connection requirement is to insure that the injury alleged by plaintiff is attributable to the defendant. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). The injury noted by the defendant—the potential loss of funds and the other costs of complying with PRWORA—appears to be directly traceable to the challenged action of the defendant. Accordingly, we have little difficulty in determining that the State of Kansas has standing to challenge the requirements of PRWORA, even though the State agreed to participate in the program.

## THE MERITS

The defendant contends that plaintiff cannot prevail on the merits. The defendant suggests that the factual allegations of the complaint, even when taken as true, do not state a claim under the Tenth Amendment and the Spending Clause.

Plaintiff contends that its challenge to PRWORA is based primarily upon the Tenth Amendment, relying principally upon *New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992); *South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987); and *Printz v. United States*, 521 U.S. 98, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). Plaintiff contends that it has been "coerced" to participate in the CSE program because a decision otherwise would result in the loss of all funds for child support enforcement services and aid to children and families in need. The loss of these funds, plaintiff argues, would cause substantial injury to Kansas citizens. Plaintiff states:

PRWORA is both more coercive and more onerous in its requirements than any other Act which has been subjected to constitutional challenge to date. By threatening Kansas with the loss of 100% of federal funding for child support enforcement, the entire State budget for such services, *and* 100% of federal funding for a separate program aiding needy families and children, PRWORA coerces the State and its employees to serve as an administrative arm of the Congressional will in a manner expressly disapproved of by the Founding Fathers who created our government as a *federalist,* not a unitary system. If the dual sovereign structure of our government established by the Founding Fathers is to survive, PRWORA must be struck down.

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) cannot be granted unless it appears that the plaintiff can prove no set of facts that would entitle it to relief. *Maez v. Mountain States Tel. and Tel., Inc.,* 54 F.3d 1488, 1496 (10th Cir.1995); *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). In consideration of such a motion, the court must construe liberally the pleadings and indulge all favorable inferences in favor of the plaintiff. *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993); *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991). The court, however, need not accept as true those allegations that are conclusory in nature, i.e., which state legal conclusions rather than factual assertions. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

Plaintiff argues that the issues raised by its complaint cannot be resolved on a motion to dismiss. Specifically, plaintiff suggests that the issue of coercion must await discovery before it can be addressed. The court believes that the issues raised by the plaintiff's complaint can be decided on the instant motion. *See, e.g., South Dakota v. Dole,* 791 F.2d 628, 634 (8th Cir.1986) (affirming trial court's disposition of a Spending Clause challenge at the motion to dismiss stage), *aff'd,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987); *California v. United States,* 104 F.3d 1086, 1091–92 & n. 10 (9th Cir.1997) (rejecting plaintiff's contention that motion to dismiss inappropriate on grounds that Spending Clause challenge required determination as a matter of fact of whether coercion existed).

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress." *New York,* 505 U.S. at 156, 112 S.Ct. 2408. Congress, through the Spending Clause set forth in Article I, section 8 of the Constitution, may "hold out incentives to the State as a method of influencing a State's policy choices" or may "encourage a State to regulate in a particular way." *Id.* at 166, 112 S.Ct. 2408. In a case such as this one, where Congress has attached conditions to the receipt of federal funds, the inquiries under the Spending Clause and the Tenth Amendment "are mirror images of each other." *Id.* at 156, 112 S.Ct. 2408.

■ Congress has for many years used conditional offers of federal funds to regulate the actions of the states. The Constitution grants Congress the power to "provide for the common Defence and general Welfare of the United States." U.S. Const. art I, § 8, cl. 1. Under the Constitution, the federal government's conditioning of funds is permissible if (1) the spending is in furtherance of the general welfare; (2) Congress does so unambiguously to the end that states may knowingly exercise their choice to either accept or reject the funds; (3) the conditions imposed are reasonably related to the federal interest in the particular program; and (4) no constitutional provision "provide[s] an independent bar to the conditional grant of federal funds." *Dole,* 483 U.S. at 207–08, 107 S.Ct. 2793; *see also Rust v. Sullivan,* 500 U.S. 173, 193, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) ("The Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest."); *Helvering v. Davis,* 301 U.S. 619, 640–41, 57

S.Ct. 904, 81 L.Ed. 1307 (1937) (Congress may spend its money, and place conditions on those expenditures, as it sees fit, so long as the expenditures and conditions are made in pursuit of "the general welfare."). In addition to these four restrictions, the *Dole* court read the Spending Clause to impose limits on Congress's ability to "coerce" states in ways that it could not directly mandate under its other Article I powers. The Court observed: "[I]n some circumstances, the financial inducement offered by congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'" *Id.* at 211, 107 S.Ct. 2793 (quoting *Steward Machine Co. v. Davis*, 301 U.S. 548, 590, 57 S.Ct. 883, 81 L.Ed. 1279 (1937)). The Court concluded that a threatened loss to states of five percent of their otherwise obtainable allotment of federal highway funds did not pass this critical point, but did not suggest what percentage of these funds might. *Id.* This case was in accord with numerous cases at the Supreme Court level and in the lower courts that have failed to invalidate an Act of Congress under the Spending Clause. *See, e.g., Fullilove v. Klutznick*, 448 U.S. 448, 478–80, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980); *Massachusetts v. United States*, 435 U.S. 444, 461–62, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978); *Lau v. Nichols*, 414 U.S. 563, 568–69, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974); *Oklahoma v. United States Civil Service Comm.*, 330 U.S. 127, 142–44, 67 S.Ct. 544, 91 L.Ed. 794 (1947); *Texas v. United States*, 106 F.3d 661, 666 (5th Cir.1997); *California v. United States*, 104 F.3d 1086, 1092 (9th Cir.1997); *Virginia v. Browner*, 80 F.3d 869, 881–82 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 764, 136 L.Ed.2d 711 (1997); *Housing Auth. of City of Fort Collins v. United States*, 980 F.2d 624, 628–29 (10th Cir.1992); *Oklahoma v. Schweiker*, 655 F.2d 401, 413–14 (D.C.Cir.1981).

Plaintiff initially raises some cursory arguments that Congress, in passing PRWORA, has violated some of the four conditions set forth in *Dole.* Plaintiff's primary argument, however, is that it has been coerced into participating in the Title III requirements of PRWORA in order to avoid the loss of funds for its programs for the poor. Plaintiff suggests this is the case noted in *Dole* where "the financial inducement offered by Congress ... [is] so coercive as to pass the point at which pressure turns into compulsion." *Dole*, 483 U.S. at 211, 107 S.Ct. 2793 (citation and quotation omitted).

■ The court is persuaded that the four conditions stated in *Dole* are present in this case. There can be little dispute that the first requirement is met here. Courts are required to defer substantially to Congress' judgment in determining whether a particular expenditure serves general public purposes. *Dole*, 483 U.S. at 207, 107 S.Ct. 2793. The overall goal of PRWORA was to protect children and facilitate the self-sufficiency of welfare recipients. The requirements of Title III of PRWORA were designed with the intent of "establishing uniform State tracking procedures; taking strong measures to establish paternity and funding, and ensuring tough child support enforcement." H.R.Rep. No. 104–651 at 1324. Accordingly, we have little trouble in determining that the challenged provisions are intended to serve the general welfare. *See Childrens & Parents Rights Ass'n v. Sullivan*, 787 F.Supp. 724, 735 (N.D.Ohio 1991) ("[C]hild support regulations are within the 'pursuit of the general welfare.'").

As to the second requirement, plaintiff asserts only that certain, unidentified, computer-related standards are ambiguous, but does not contend that any of the remaining "approximately 94 separate sections of Title III of PRWORA" it challenges are ambiguous. Plaintiff also does not assert that any perceived ambiguity in the amendments resulted in its failing to "exercise [its] choice knowingly," as required by *Dole.*

The requirement that recipients of federal funds receive unambiguous notice of the conditions they are assuming is to ensure the voluntariness of their participation in federal programs. *Pennhurst v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) ("By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation."). At the hearing on the instant motion, defendant pointed out that new legislation passed in July of this year may have solved plain-

tiff's complaints about the computer-related problems. In any event, the court does not find that plaintiff has demonstrated that any perceived ambiguity in PRWORA precluded it from exercising its choice knowingly.

In addressing the third requirement, plaintiff has suggested that the demands of Title III of PRWORA are over-inclusive and under-inclusive. Plaintiff has suggested that certain changes in the child support enforcement program will not prove efficacious. The court is persuaded, despite the arguments made by the plaintiff, that the measures enacted by Congress in PRWORA are reasonably related to the federal interest in the national program. The statutory requirements here at issue clearly demonstrate sufficient relationship to the purpose of the federal funding so as to pass constitutional muster.

The arguments made by plaintiff appear to have their basis in the dissent written by Justice O'Connor in *Dole*. Justice O'Connor would have applied a substantially different germaneness test than that articulated in the majority opinion. As set forth previously, the majority was concerned only that a funding condition not be "unrelated 'to the federal interest in particular national projects or programs,'" and thus sought to ensure minimum rationality in the relationship between the funding condition and the federal interest sought to be advanced. *Dole*, 483 U.S. at 207, 107 S.Ct. 2793 (quoting *Massachusetts v. United States*, 435 U.S. 444, 461, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978)). Justice O'Connor, in contrast, would have required a much closer fit between the funding condition and the proclaimed federal interest. Thus, she, unlike the *Dole* majority, would not sustain a funding condition found to be over- or under-inclusive. *Dole*, 483 U.S. at 214–15, 107 S.Ct. 2793. She therefore would have invalidated the funding condition on the ground that it was "not sufficiently related to interstate highway construction." *Id.* at 214, 218, 107 S.Ct. 2793. While plaintiff's arguments have some support in Justice O'Connor's mind, they have no support in the majority opinion. Accordingly, the court must reject them.

Finally, the challenged provisions do not violate any "independent constitutional bar." This requirement means that Congress may not use its powers under The Spending Clause "to induce the States to engage in activities that would themselves be unconstitutional." *Dole*, 483 U.S. at 208, 107 S.Ct. 2793. Plaintiff has failed to articulate a valid independent constitutional bar present here, and the court sees none. Accordingly, we find that the four conditions of *Dole* are met.

The court shall now turn to the issue of coercion. The Supreme Court and other courts have recognized that the judiciary should attempt to avoid becoming entangled in ascertaining the point at which federal inducement to comply with a condition becomes compulsion. Justice Cardozo wrote in *Steward Machine Co.*, 301 U.S. at 589–90, 57 S.Ct. 883 (1937): "[T]o hold that motive or temptation is equivalent to coercion is to plunge the law in endless difficulties." Or, as stated by the District of Columbia Circuit Court in *Oklahoma v. Schweiker:*

> The courts are not suited to evaluating whether the states are faced here with an offer they cannot refuse or merely a hard choice. Even a rough assessment of the degree of temptation would require extensive and complex factual inquiries on a state-by-state basis. We therefore follow the lead of other courts that have explicitly declined to enter this thicket when similar funding conditions have been at issue.

655 F.2d at 414.

Finally, as stated in *Nevada v. Skinner*, 884 F.2d 445, 448 (9th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019(1990):

> [C]an a sovereign state which is always free to increase its tax revenues ever be coerced by the withholding of federal funds—or is it the state merely presented with hard political choices? The difficulty if not the impropriety of making judicial judgments regarding a state's financial capabilities renders the coercion theory highly suspect as a method of resolving disputes between federal and state governments.

These cases suggest that the coercion test is ill-conceived and probably unworkable. *See also Steward Machine Co.*, 301 U.S. at 590, 57 S.Ct. 883 (ruling that no such coercion had occurred in the case then before the Court, "assum[ing] that such a

concept can ever be applied with fitness to the relations between state and nation"). In *Dole,* the Court never defined "compulsion" or "pressure," explained how one should or could consistently distinguish between the two, or provided any example of an impermissibly "coercive" offer of federal funds to the states. Professors and commentators have roundly criticized the coercion test. *See, e.g.,* Baker, Conditional Federal Spending, 95 Colum.L.Rev.1911 (1995); Engdahl, The Spending Power, 44 Duke L.Rev. 1 (1994); Rosenthal, Conditional Federal Spending and the Constitution, 39 Stan. L.Rev. 1103 (1987). Nevertheless, as recognized in *Dole* and reaffirmed in *New York,* it stands as the law at the present time in evaluating challenges based upon the Spending Clause. Plaintiff has suggested that *New York* and *Printz* have weakened the test and indicated that a change in the law is on the horizon or should occur. There is support for the position that these cases have resuscitated federalism and revived Tenth Amendment justiciability. *See* Hoke, State Discretion Under New Federal Welfare Legislation: Illusion, Reality and a Federalism–Based Constitutional Challenge, 9 Stan. L. & Pol'y Rev. 115 (1998). The court, however, believes that we are bound to apply the coercion test under the circumstances set forth here. The court is not persuaded, even assuming that all of the allegations contained in the plaintiff's complaint concerning the "pressure" of complying with the dictates of PRWORA are true, that plaintiff can prevail on the coercion theory. Wherever the line separating encouragement from coercion may lie, Congress has not crossed it in the case at bar. The court believes that the sanctions involved here amount to inducement rather than "outright coercion." *See New York,* 505 U.S. at 165–67, 112 S.Ct. 2408. In sum, the court finds that Title III of PRWORA is a valid exercise of power by Congress under the Spending Clause. As a valid exercise of that power, it also comports with the requirements of the Tenth Amendment. *Id.* at 173–75, 112 S.Ct. 2408.

A close look at *New York* and *Printz* suggests that they do not provide support for the plaintiff's position here. In *New York,* the Court upheld two provisions of the Low–Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.C. §§ 2021b–2021j, one under the Spending Clause and the other under the Commerce Clause, and struck down one provision. The offending provision presented states with a choice: either they could "take title" to radioactive waste generated within their borders or regulate storage and disposal of such waste according to the direction of Congress. The Court held that the "take title" provision went too far and "crossed the line [that] distinguish[ed] encouragement from coercion." 505 U.S. at 175, 112 S.Ct. 2408. The "choice" presented to the states was the regulation of low-level radioactive waste according to federal standards or the acceptance of title to the waste, along with the attendant liabilities. Characterizing the latter as essentially a federal order compelling states to subsidize radioactive waste generators, the Court found that the take-title provision " 'commandeer[ed] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.' " *Id.* at 176, 112 S.Ct. 2408 (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 288, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)). Because the provision did not offer states the option to "decline to administer the federal program," it went beyond Congress's powers and "infring[ed] upon the core of state sovereignty reserved by the Tenth Amendment." *Id.* at 177, 112 S.Ct. 2408.

In *Printz,* the Court struck down certain provisions of the Brady Handgun Violence Protection Act, commonly referred to as the Brady Act, as violative of the Tenth Amendment. The Court noted that these provisions forced the states to take action by commanding the chief law enforcement officers of state and local law enforcement agencies to make "reasonable efforts" to conduct background checks on prospective gun buyers. 117 S.Ct. at 2383–84. The Court held that Congress cannot force state officers to administer or enforce federal law. *Id.* at 2381.

Unlike the "take title" provision in *New York,* the statute at issue in *Printz* did not compel state lawmakers to adopt federal regulations or legislation. However, it required "state law enforcement officers to participate,

albeit only temporarily, in the administration of a federally enacted regulatory scheme." *Id.* at 2369. The Court held that no constitutionally significant distinction could be drawn between compelling a state legislature to make federal law and compelling state officials to enforce federal law. *Id.* at 2380.

*New York* and *Printz* are simply inapposite here. Here, neither the state legislature nor state officers are faced with the choices that were presented in those cases. Plaintiff is required only to choose between receiving federal funds and complying with certain statutory mandates, or not receiving such funds. This is a choice as pointed out previously that the Supreme Court has repeatedly held to be constitutional. In both *New York* and *Printz,* the Court recognized this distinction. *See New York,* 505 U.S. at 171–72, 112 S.Ct. 2408; *Printz,* 117 S.Ct. at 2376. Indeed, the Supreme Court in *New York* and *Printz* held that the statutes at issue in those cases were unconstitutional even though it specifically recognized that both statutes could have been lawfully passed pursuant to Congress's Spending Clause power. *See Printz,* 117 S.Ct. at 2385 (O'Connor, J., concurring) (noting that Congress could have conditioned the States' receipt of federal funds on compliance with the statute); *New York,* 505 U.S. at 167, 112 S.Ct. 2408 (noting that Congress could have enacted the statute under its Spending Clause power).

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Doc. # 12) be hereby granted for the reasons set forth in the foregoing memorandum.

**IT IS SO ORDERED.**