2013 ND 238

**Billy Joe KINSELLA, Petitioner and Appellant**

v.

**STATE of North Dakota, Respondent and Appellee.**

**No. 20130150.**

Supreme Court of North Dakota.

Dec. 19, 2013.

Chad R. McCabe, Bismarck, ND, for petitioner and appellant.

Brian D. Grosinger, Assistant State's Attorney, Mandan, ND, for respondent and appellee.

VANDE WALLE, Chief Justice.

[¶ 1]   Billy Joe Kinsella appealed from a district court judgment denying his application for post-conviction relief.   We affirm, concluding Kinsella failed to demonstrate he received ineffective assistance of counsel from his trial attorney.

I

[¶ 2]   In 2010, a jury convicted Kinsella of sexually assaulting his sixteen-year-old stepdaughter, S.B. Evidence at the trial included testimony from the investigating officer, the sexual assault nurse examiner ("SANE"), North Dakota State Crime Laboratory analysts, and DNA evidence taken from bed sheets located in the Kinsella residence.   One of the crime laboratory analysts testified the bed sheet tested positive for semen and that DNA analysis revealed the semen matched Kinsella's DNA profile.   S.B. testified she did not

remember the sexual assault or the sexual assault examination conducted by the SANE nurse. Kinsella appealed his conviction to this Court. We affirmed the judgment in *State v. Kinsella*, 2011 ND 88, ¶ 1, 796 N.W.2d 678.

[¶ 3] Kinsella subsequently filed a petition for post-conviction relief. At the post-conviction relief hearing, Kinsella argued his trial counsel provided ineffective assistance of counsel for seven reasons: (1) failing to file a motion to suppress evidence; (2) failing to suppress statements allegedly taken in violation of *Miranda v. Arizona*; (3) appearing at a hearing without informing Kinsella; (4) failing to have the jury brought into the courtroom to have information requested by the jury given to it; (5) failing to advise Kinsella of his right against self-incrimination; (6) failing to investigate allegedly exculpatory evidence; and (7) failing to investigate and prepare defense witnesses to testify. The district court denied the petition. On appeal, Kinsella raises the same arguments he presented at the district court hearing. Kinsella requests a new trial and an order to suppress the "unconstitutionally obtained evidence."

## II

[¶ 4] The standard of review for a claim of ineffective assistance of counsel in a post-conviction appeal is well-established:

> Post-conviction relief proceedings are civil in nature and governed by the North Dakota Rules of Civil Procedure. Whether a petitioner received ineffective assistance of counsel is a mixed question of law and fact and is fully reviewable on appeal. Under N.D.R.Civ.P. 52(a), the district court's findings of fact will not be disturbed on appeal unless clearly erroneous. "A finding of fact is clearly erroneous if it is induced by an errone-

ous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made."

*Clark v. State*, 2008 ND 234, ¶ 11, 758 N.W.2d 900 (citations omitted). The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that the Sixth Amendment right to counsel in all criminal prosecutions is a fundamental right essential to fair trial and obligatory upon the states through the Fourteenth Amendment). Article I, § 12 of the North Dakota Constitution also guarantees a criminal defendant the right to effective assistance of counsel. *Klose v. State*, 2005 ND 192, ¶ 9, 705 N.W.2d 809.

[¶ 5] In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established the test for whether a convicted criminal defendant's ineffective assistance of counsel claim warrants a reversal of conviction. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must show that the deficient performance prejudiced his or her defense. *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

[¶ 6] This Court has stated that the "[e]ffectiveness of counsel is measured by

an 'objective standard of reasonableness' considering 'prevailing professional norms.'" *DeCoteau v. State,* 2000 ND 44, ¶ 8, 608 N.W.2d 240 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). We have also explained:

> Establishing both elements is a heavy burden and requires a defendant to both overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. This requires the defendant to demonstrate with specificity how and where trial counsel was incompetent, and it is probable a different result would have been obtained had trial counsel not performed incompetently.

*Klose,* 2005 ND 192, ¶ 9, 705 N.W.2d 809 (citation omitted). In reviewing a trial counsel's conduct in an ineffective assistance of counsel claim, we are cognizant of limiting the "distorting effect of hindsight." *Garcia v. State,* 2004 ND 81, ¶ 5, 678 N.W.2d 568.

### III

*A. Failure to File a Motion to Suppress Evidence from a Search of Kinsella's Home*

[¶ 7] In the direct appeal, we made a factual error in stating, "[t]he officer then obtained a warrant and searched Kinsella's home...." *Kinsella,* 2011 ND 88, ¶ 3, 796 N.W.2d 678. No search warrant was issued to search the Kinsella residence. The misstatement has no substantive impact on the direct appeal proceedings or on the post-conviction proceedings.

[¶ 8] Kinsella argues his trial counsel was ineffective "when he failed to file a motion to suppress any and all evidence from the search of Kinsella's home." Kin-

sella argues that when S.B. was at the hospital for her sexual assault exam, Detective Vanderhoef "threatened" Lori Kinsella (Kinsella's wife and S.B.'s mother) that social services would take S.B. away from her if she did not comply with the police investigation. Later in the evening, Detective Vanderhoef went to the Kinsella residence and asked Lori for permission to search the house. Lori consented. Police entered the Kinsella residence and seized sheets and bedding from S.B.'s bedroom. At the post-conviction hearing, Lori testified she allowed the police to enter her home "because I was still upset to the fact that [Detective Vanderhoef] had contacted social services to take my daughter away." Lori also signed an affidavit stating, "[t]he only reason I ever allowed [the police] into the home was because of his threats to take away my child."

[¶ 9] "Failure to file a pretrial suppression motion, by itself, does not equate to ineffective assistance of counsel." *Roth v. State,* 2007 ND 112, ¶ 10, 735 N.W.2d 882. The United States Supreme Court has instructed:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Thus, while respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values.

*Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Thus, to bring a successful ineffective as-

sistance of counsel claim based on the failure of trial counsel to raise a Fourth Amendment issue, Kinsella must also prove he would have prevailed on his motion to suppress and that there is a reasonable probability a successful motion would have affected the outcome of the trial. *Id.; see also Roth*, 2007 ND 112, ¶ 10, 735 N.W.2d 882.

[¶ 10] The Fourth Amendment states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. The North Dakota Constitution also shields individuals from unreasonable government searches and seizures. N.D. Const. art. I, § 8. Warrantless and non-consensual searches and seizures made inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Notwithstanding this presumption, the Fourth Amendment's protection against warrantless searches inside a home is not absolute; it is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *see also State v. DeCoteau*, 1999 ND 77, ¶ 9, 592 N.W.2d 579. When no exception to the requirement exists, such as consent, any evidence seized by police is inadmissible in court under the exclusionary rule. *State v. Graf*, 2006 ND 196, ¶ 9, 721 N.W.2d 381.

[¶ 11] On appeal, Kinsella argues the consent given by his wife was not voluntary, his Fourth Amendment claim is meritorious and that there is a "reasonable probability that the verdict would have been different absent the excludable evidence...." Kinsella argues the consent was involuntary because Detective Vanderhoef threatened Lori that social services would take away her child if she did not cooperate.

[¶ 12] Given the facts of this case, we are not convinced that trial counsel's decision not to file a motion to suppress rises to the level of ineffective assistance of counsel under the Sixth Amendment. At the post-conviction hearing, trial counsel testified that neither Kinsella nor Lori ever informed him the police search and seizure was based on involuntary consent. Trial counsel testified he did not file a motion to suppress because he "did not feel there was any grounds for it," and that "[i]f you're not cooperating you're not protecting the child. Social services intervenes." Detective Vanderhoef's statement to Lori that social services would intervene if she did not cooperate may have simply reflected the reality of the situation. In ruling against Kinsella the trial court stated, even if a suppression motion had been filed, "the officer was merely stating a fact, i.e. that if Mrs. Kinsella did not act in a way to protect her children social services would be notified. While Mrs. Kinsella may have viewed that as a coercive threat, it is simply fact...." Additionally, Detective Vanderhoef did not threaten Lori that social services would take her child away when he asked for permission to search the house. Detective Vanderhoef's statement was made at the hospital while S.B. was being examined. It was not until later in the evening that Detective Vanderhoef went to the Kinsella residence and asked for permission to enter and search.

[¶ 13] This case is also distinguishable from *Kimmelman*, although many of the underlying facts are similar. In *Kimmelman*, the defendant was charged with raping a fifteen-year-old girl. *Kimmelman*, 477 U.S. at 368, 106 S.Ct. 2574. The victim was examined at a hospital and tested

for indicia of sexual assault. *Id.* Police went to the defendant's apartment and, although he was not home, officers conducted a search of the defendant's one-room apartment after another tenant in the building let the officers in. *Id.* Police seized a bed sheet from the defendant's bedroom containing DNA evidence. At trial, the defendant's attorney sought to suppress introduction of the sheet arguing the police seized it without a search warrant in violation of the Fourth Amendment. The judge rejected the trial counsel's suppression motion because it was not timely under New Jersey Court Rules and the defendant was subsequently convicted. *Id.* at 368–69, 106 S.Ct. 2574. On petition for certiorari, the Supreme Court of the United States held that the defendant's trial counsel did not meet the objective standard of reasonableness required by *Strickland.* *Id.* at 384, 106 S.Ct. 2574. The Supreme Court reasoned:

> The trial record in this case clearly reveals that Morrison's attorney failed to file a timely suppression motion, not due to strategic considerations, but because, until the first day of trial, he was unaware of the search and of the State's intention to introduce the bedsheet into evidence. Counsel was unapprised of the search and seizure because he had conducted no pretrial discovery. Counsel's failure to request discovery, again, was not based on "strategy," but on counsel's mistaken beliefs that the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense and that the victim's preferences would determine whether the State proceeded to trial after an indictment had been returned.
>
> Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forgo that stage of pretrial preparation and applying a "heavy measure of deference," to his

judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms.

*Id.* at 385, 106 S.Ct. 2574 (citation omitted).

[¶ 14] The overarching omissions and failures of the trial counsel in *Kimmelman* are not present in the facts of the instant case. Kinsella's trial counsel specifically testified he believed there was no basis for a motion to suppress, that the police reports indicated Lori gave consent to search, and that neither Lori nor Kinsella ever expressed the consent was involuntary. Additionally, the district court found that trial counsel was bound by ethical rules prohibiting him from filing frivolous motions and that he could not ethically file a motion to suppress if he did not know that there may be grounds for such a motion. The court further elaborated that, even if a suppression motion had been filed, Detective Vanderhoef was merely conveying the factual reality of the situation, that if Lori did not act in a way to protect her child, social services would be notified. The court reasoned, "[w]hile [Lori] may have viewed that as a coercive threat, it is simply fact and would not be sufficient to suppress the results of the search." Applying a "heavy measure of deference" to trial counsel's decision not to file a motion to suppress, we conclude that Kinsella is unable to show that trial counsel's conduct fell below an objective standard of reasonableness. *Kimmelman,* 477 U.S. at 385, 106 S.Ct. 2574.

### B. Failure to Suppress Statements Allegedly Taken in Violation of Miranda

[¶ 15] Kinsella argues his trial counsel was ineffective when he "failed to file a motion to suppress any and all statements" Kinsella gave during an interview with Detective Vanderhoef. Kinsella does

not specify which statements violated *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In the underlying jury trial, Detective Vanderhoef testified he properly Mirandized Kinsella prior to the interview. Kinsella alleges he "does not recall being *Mirandized*. . . ." At the post-conviction hearing, Kinsella's trial counsel testified Kinsella denied everything, and that there was nothing incriminating to suppress. In its post-conviction relief order, the district court found, "Kinsella denied all allegations of sexually assaulting the victim when questioned by the officers."

[¶ 16] Applying the facts to the first prong of *Strickland,* Kinsella is unable to show his trial counsel's performance was deficient for failing to suppress unspecified statements. Kinsella's generic claim that his trial counsel failed to "suppress any and all statements" does not meet his burden of showing his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Under the second prong, Kinsella is also unable to demonstrate how the alleged deficient performance of his trial counsel, in failing to raise *Miranda,* prejudiced his defense "as to deprive the defendant of a fair trial." *Id.*

### C. Hearing in Kinsella's Absence

[¶ 17] Kinsella argues the district court erred and his trial counsel was ineffective when the court "held a hearing on April 14, 2010 in Kinsella's absence and without informing him, and/or when Kinsella's counsel failed to advise or include Kinsella in this hearing. . . ." Two days before trial was scheduled to begin, the State moved to amend its Information to add the SANE nurse and the DNA analysts as witnesses. The SANE report, DNA report, and the witnesses had been previously disclosed to the defense; however, the State's Information did not include the SANE nurse or DNA analysts as witnesses for trial.

[¶ 18] Kinsella's trial counsel argued that the State should not be allowed to add witnesses on the eve of trial. On April 14, a conference was held concerning the State's request to amend the Information. Kinsella was not present at the hearing, and no transcript of the hearing exists. At the post-conviction hearing, trial counsel testified the conference "came up so quickly and was scheduled so quickly that there wasn't any ability to get ahold of Mr. Kinsella that quickly. It was within an hour." The court granted the State's request to amend the Information. The court also granted Kinsella a continuance. At the post-conviction hearing, Kinsella testified he learned the trial had been continued "that day," or "right before we went to court I think."

[¶ 19] The State contends that Kinsella's argument the court erred in granting a continuance is not properly before this Court because it was not raised at trial or on direct appeal. As an affirmative defense, N.D.C.C. § 29–32.1–12(2) states, "[a] court may deny relief on the ground of misuse of process. Process is misused when the applicant: a. Presents a claim for relief which the applicant inexcusably failed to raise either in a proceeding leading to judgment of conviction and sentence. . . ." We agree with the State. Kinsella has provided no explanation why the issue was not pursued on direct appeal. We conclude Kinsella's claim for post-conviction relief is barred by misuse of process because he "inexcusably failed to raise an issue in a proceeding leading to judgment of conviction and now seeks review in a first application for post-conviction relief. . . ." *Syvertson v. State,* 2000 ND 185, ¶ 18, 620 N.W.2d 362. Furthermore,

N.D.R.Crim.P. 43 states that "the defendant must be present at: (A) the initial appearance, the arraignment, and the plea; (B) every trial stage, including jury impanelment and the return of the verdict; and (C) sentencing." The April 14 conference does not fall under one of these phases.

[¶ 20] Applying the facts to the first prong of *Strickland*, we also conclude trial counsel's performance concerning the April 14 hearing was not deficient. Trial counsel testified there was inadequate time to contact his client as the conference was scheduled "within an hour." Kinsella also testified he may have learned about the conference "that day," or "right before we went to court I think." Kinsella's trial counsel communicated the facts to his client and was forced to act quickly because trial was scheduled for the next day. In response to the new witnesses, trial counsel filed for a continuance. Under the "objective standard of reasonableness," trial counsel's actions are not indicative of deficient performance. *DeCoteau*, 2000 ND 44, ¶ 8, 608 N.W.2d 240.

### D. Jury Questions

[¶ 21] Kinsella argues his trial counsel was ineffective when "he failed to claim error for the trial court's procedure in responding to two specific questions and/or failed to exercise Kinsella's statutory right to have the jury brought into the courtroom and have the information requested by the jury given to it. . . ." During jury deliberations, the court received the following written questions from the jury:

First question we would like to know if the swab test vaginal had semen. And if there was a DNA profile on it.

Question number two, was her DNA on the bed sheet just skin cells or vaginal secretions?

Question number three, do we need to prove that this sexual act happened on or about 7–16, 2009?

Fourth question: what does "about" mean? "Within weeks"?

[¶ 22] Outside the presence of the jury, the court, the State's attorney, and the defense discussed how to respond to the jury inquiries. The parties "agreed that the correct response would be to inform the jury to rely on their own recollections for their first two questions." As to the third question, the parties agreed the court was to refer the jury to the elements of the crime on page seven of the jury instructions. As to the fourth question, the parties agreed to have the court refer the jury to page five of the instructions and instruct the jury to "consider the evidence using your common sense and experience." The court provided written answers to each question. The parties reviewed the answers in Kinsella's presence. Kinsella did not object to the court's procedure in responding to the jury's questions.

[¶ 23] Section 29–22–05, N.D.C.C. states:

After the jurors have retired for deliberation, if they desire to be informed on a point of law arising in the cause, or to have any testimony about which they are in doubt or disagreement read to them, they, upon their request, must be conducted into the courtroom by the officer who has them in custody. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the state's attorney and the defendant or the defendant's counsel, or after they have been called.

This Court has also instructed that "N.D.C.C. § 29–22–05 confers a statutory right upon a defendant to have the jury brought into the courtroom and to have

the information requested by the jury given to it." *State v. Jahner*, 2003 ND 36, ¶ 8, 657 N.W.2d 266. Additionally, we have "construed N.D.C.C. § 29–22–05 to require that 'all communications with the jurors, after a case has been submitted to them, must be made in open court and in the presence of the defendant.' " *State v. Fehl–Haber*, 2007 ND 99, ¶ 11, 734 N.W.2d 770 (citation omitted). "The district court must allow a jury to rehear any testimony requested." *State v. Austin*, 2007 ND 30, ¶ 19, 727 N.W.2d 790.

[¶ 24] Here, the jury did not request the court for testimony. The jury also did not request to be brought into court. The court's communication with the jury was made in open court in the presence of Kinsella and his trial counsel. Trial counsel testified, he found the court's response acceptable to the defense because "the jury did not ask for any portion of or all of the testimony of a specific witness, that the law does not require the Court to provide that specific testimony." Under *Strickland*, trial counsel's decision not to object to the court's procedure in answering the questions did not fall below an objective standard of reasonableness or "deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687, 104 S.Ct. 2052.

### E.  Defendant's Decision to Testify

■ [¶ 25] Kinsella argues his trial counsel was ineffective for failing "to advise Kinsella of his right to testify or not to testify. . . ." At trial, Kinsella took the stand in his own defense. In the direct appeal, we held that Kinsella's testimony on cross-examination that he was thirty-four-years-old was sufficient evidence to satisfy the age element of the crime. *Kinsella*, 2011 ND 88, ¶ 12, 796 N.W.2d 678. At the post-conviction hearing, trial counsel testified Kinsella's trial strategy was to create a chronology of events creating an

alibi. Trial counsel testified, he informed Kinsella of the right "not to take the stand, but I told him there was no other way to get into evidence his testimony about the timeline, where he was, what he was doing, people he was talking to on the phone." In denying Kinsella's post-conviction motion, the district court found that at his initial appearance on the charges, Kinsella was advised of his right to remain silent and that his silence could not be used against him at trial.

[¶ 26] Under the *Strickland* prongs, trial counsel did not act unreasonably. Although the district court did not make a specific finding as to whether trial counsel advised Kinsella of his right against self-incrimination, the court did find the decision to take the stand was part of the defense's strategy. Based on these facts, Kinsella is unable to meet the heavy burden of showing his attorney's conduct did not fall "within the wide range of reasonable professional assistance" or that it was "probable a different result would have been obtained" but for the alleged incompetence. *Klose*, 2005 ND 192, ¶ 9, 705 N.W.2d 809.

### F.  Failure to Test Bed Sheets for Lori Kinsella's DNA

■ [¶ 27] Kinsella argues his trial counsel provided ineffective assistance when he failed to have the bed sheets tested for Lori Kinsella's DNA. At trial, "[a]n analyst from the State Crime Laboratory testified Kinsella's semen was present on the bed sheet recovered from S.B.'s bedroom, along with S.B.'s skin cells." *Kinsella*, 2011 ND 88, ¶ 15, 796 N.W.2d 678. Kinsella testified at the post-conviction hearing that he had sex with his wife in the bed S.B. used. Kinsella also testified his semen could have matched with S.B.'s DNA profile on the bed sheet because he and his wife used the bed.

[¶ 28] We conclude trial counsel's performance was not ineffective for declining to conduct an independent DNA analysis of the bed sheets. Although trial counsel did not test the bed sheets, he did elicit testimony from Kinsella that Lori's DNA could possibly be present on the bed sheets. Trial counsel's actions were not "so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Even if Kinsella is successful under the first prong, it is at best speculative that the outcome of the trial would have been different if an independent DNA analysis was conducted.

### G. Failure to Properly Prepare for Trial

[¶ 29] Kinsella lastly argues his trial counsel failed to enter an allegedly exculpatory lab report into evidence, failed to make the record clear as to whether S.B.'s bed sheet DNA was vaginal or skin cells, failed to impeach S.B., failed to make the record clear Kinsella could have destroyed the bed sheets but did not, failed to make the record clear Kinsella did not confront S.B. after the accusation, failed to obtain phone records showing a chronology of events, and failed to impeach Detective Vanderhoef based on the detective's personnel file.

[¶ 30] Kinsella's claims are unavailing. Kinsella argues the lab report would have shown there was no semen detected from vaginal and rectal swabs. However, Kinsella was charged with "knowingly [having] sexual contact with another person...." N.D.C.C. § 12.1–20–07. "Contact" does not require the presence of semen in a vaginal swab. The jury still could have convicted him of sexual assault even if no semen was present in the vaginal and rectal swabs.

[¶ 31] Kinsella's other claims second guess the trial strategy through the distorting light of hindsight. *Garcia*, 2004 ND 81, ¶ 5, 678 N.W.2d 568. The decision not to impeach S.B. did not render Kinsella's legal representation ineffective. At trial, S.B. recanted her deposition testimony and said she could not remember the sexual assault taking place. At the post-conviction hearing, trial counsel testified he did not impeach S.B. because he believed "that the jury was left with the idea that she had recanted her testimony, that previous testimony was not true and nothing had happened."

[¶ 32] Trial counsel's representation was not inadequate because he did not inform the jury Kinsella could have but did not destroy evidence and did not confront S.B. Additionally, although trial counsel did not obtain phone records, the witnesses he presented at trial testified they spoke on the phone with Kinsella throughout the night in question. Moreover, it is unclear how impeaching Detective Vanderhoef based on his personnel record would detract the evidence against Kinsella. We conclude Kinsella is unable to show his trial counsel's representation was ineffective for any of these reasons.

### IV

[¶ 33] We affirm the district court's judgment denying Kinsella's application for post-conviction relief.

[¶ 34] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.