2014 ND 41

**Mark C. OSIER, Petitioner
and Appellant**

v.

**STATE of North Dakota, Respondent
and Appellee.**

No. 20130226.

Supreme Court of North Dakota.

March 11, 2014.

Rehearing Denied April 3, 2014.

Benjamin C. Pulkrabek, Mandan, N.D., for petitioner and appellant.

Reid A. Brady and Cherie L. Clark, Assistant State's Attorneys, Fargo, N.D., for respondent and appellee; submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] Mark Osier appealed from a district court order denying his application for post-conviction relief. We affirm, concluding Osier failed to establish he was prejudiced by his trial counsel's alleged deficient performance.

I

[¶ 2] In 1994, Osier was charged with multiple counts of gross sexual imposition ("GSI") involving a minor under the age of 15 for alleged incidents involving his daughter, S.O.

[¶ 3] At Osier's first jury trial, S.O. testified that Osier had repeatedly engaged in sexual acts with her and that she began placing a "swirl" mark on her calendar to denote the dates when the sexual acts with her father occurred. A personnel manager from the employer of Osier and his wife corroborated that, on the marked dates, Osier did not work or only worked part of the day, and that Osier's wife usually worked on the marked dates. Dr. Miller, a pediatrician who had examined S.O., testified that S.O.'s hymen was worn away in a manner consistent with multiple acts of sexual intercourse or other repeated vaginal penetration.

[¶ 4] Osier's trial attorney had complied with the then-current rape shield statute, see N.D.C.C. § 12.1–20–15 (superseded in 1998 by N.D.R.Ev. 412), and elicited testimony from S.O., her boyfriend, and two investigators that S.O. and her boyfriend had engaged in sexual intercourse on one occasion. Because S.O. had originally denied having sexual contact with anyone other than her father, Osier's attorney used this evidence to impeach S.O.'s credibility as well as to attempt to show that someone other than Osier was responsible for S.O.'s physical condition. The jury in Osier's first trial deadlocked, and the court declared a mistrial.

[¶ 5] For his second jury trial Osier hired an out-of-state attorney, Marc Kurzman. Kurzman filed a pretrial motion in limine requesting he be allowed to offer evidence of S.O.'s sexual relations with her boyfriend and of her previous denials of sexual activity. The State again presented evidence from S.O. detailing Osier's sexual acts and the "swirl" marks in the calendar; testimony regarding Osier and his wife's work schedules; and Dr. Miller's testimony regarding S.O.'s physical condition and its likely cause. Kurzman presented evidence of S.O.'s act of sexual intercourse with her boyfriend and the fact she had previously repeatedly lied about it.

[¶ 6] The jury convicted Osier of six counts of GSI. This Court reversed Osier's conviction on appeal, holding that the district court had erroneously admitted testimony from Osier's niece that Osier had sexually molested her on several occasions when she was eight or nine years old. See *State v. Osier*, 1997 ND 170, 569 N.W.2d 441.

[¶ 7] Osier was subsequently tried a third time. Kurzman again represented Osier and again filed a pretrial motion to offer evidence of S.O.'s sexual relations with her boyfriend. Again, the State presented S.O.'s testimony, the corroborating testimony regarding Osier and his wife's

work schedules, and Dr. Miller's opinion. Kurzman was allowed to present evidence regarding S.O.'s one instance of sexual intercourse with her boyfriend through testimony of S.O., her boyfriend, and the two investigators. Kurzman also sought to introduce evidence of additional sexual conduct between S.O. and her boyfriend. In an offer of poof, Kurzman alleged that, in addition to the one act of sexual intercourse they admitted to, S.O. and her boyfriend had on one occasion engaged in fellatio and on another occasion the boyfriend had digitally penetrated S.O. The State objected, arguing Kurzman had not filed a pretrial affidavit complying with the rape shield statute. *See* N.D.C.C. § 12.1-20-15 (superseded). The court held Kurzman had not properly complied with the rape shield statute and refused to admit the testimony.

[¶ 8] The jury found Osier not guilty on one count of GSI but guilty on the remaining five counts. This Court affirmed the criminal judgment on appeal, concluding that the district court did not abuse its discretion in holding Kurzman had failed to comply with the rape shield statute; that the evidence of additional sexual conduct was not sufficient to explain S.O.'s physical condition; and that the impeachment value of the additional evidence was merely cumulative to abundant other evidence. *See State v. Osier*, 1999 ND 28, ¶¶ 8, 15–16, 590 N.W.2d 205.

[¶ 9] In 2012, Osier filed an application for post-conviction relief, alleging he received ineffective assistance of counsel at his third trial. Osier argued Kurzman's failure to comply with the rape shield statute, resulting in inadmissibility of the evidence of additional sexual acts between S.O. and her boyfriend, fell below the objective standard of reasonable representation and resulted in prejudice to Osier. After a hearing, the district court determined that Osier failed to demonstrate he was prejudiced by Kurzman's alleged deficient performance and that the issue was barred by res judicata because this Court had determined in *Osier*, 1999 ND 28, 590 N.W.2d 205, that Osier had failed to demonstrate that any of the proffered rape shield evidence was relevant. The court accordingly denied the application for post-conviction relief.

## II

[¶ 10] Applications for post-conviction relief are civil in nature and are governed by the North Dakota Rules of Civil Procedure. *Broadwell v. State*, 2014 ND 6, ¶ 5, 841 N.W.2d 750; *Bahtiraj v. State*, 2013 ND 240, ¶ 8, 840 N.W.2d 605. The applicant bears the burden of establishing grounds for post-conviction relief. *Broadwell*, at ¶ 5; *Bahtiraj*, at ¶ 8. When an applicant for post-conviction relief claims ineffective assistance of counsel, he must establish both prongs of the *Strickland* test and demonstrate (1) counsel's representation fell below an objective standard of reasonableness, and (2) he was prejudiced by counsel's deficient performance. *Broadwell*, 2014 ND 6, ¶ 7, 841 N.W.2d 750; *Dahl v. State*, 2013 ND 25, ¶ 8, 826 N.W.2d 922; *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact which is fully reviewable on appeal. *Kinsella v. State*, 2013 ND 238, ¶ 4, 840 N.W.2d 625; *Bahtiraj*, at ¶ 8.

[¶ 11] To meet the prejudice prong of the *Strickland* test, the defendant bears the heavy burden of establishing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Dahl*, 2013 ND 25, ¶¶ 8, 15, 826 N.W.2d 922; *Coppage v. State*, 2013 ND 10, ¶ 12,

826 N.W.2d 320. To meet this burden the defendant must prove not only that counsel's assistance was ineffective, but must demonstrate with specificity how and where trial counsel was incompetent and must specify the probable different result if trial counsel had not performed incompetently. *Kinsella,* 2013 ND 238, ¶ 6, 840 N.W.2d 625; *Dahl,* at ¶ 8; *Coppage,* at ¶ 12. We have explained that, "[u]nless counsel's errors are so blatantly and obviously prejudicial that they would in all cases, regardless of the other evidence presented, create a reasonable probability of a different result, the prejudicial effect of counsel's errors must be assessed within the context of the remaining evidence properly presented and the overall conduct of the trial." *Broadwell,* at ¶ 7 (quoting *Coppage,* at ¶ 21). Courts need not address both prongs of the *Strickland* test, and if a court can resolve the case by addressing only one prong it is encouraged to do so. *Broadwell,* at ¶ 7.

[¶ 12] Osier claims he was prejudiced by his inability to elicit testimony that S.O.'s boyfriend had digitally penetrated S.O. on one occasion and that S.O. and her boyfriend had engaged in one other incident involving non-vaginal sexual activity. In his brief on appeal, Osier argues that "the result of the third trial could have been different without the trial court's limitations on attorney Kurzman's questioning of State's witnesses." To satisfy the prejudice prong of the ineffective assistance test, however, Osier would have to establish there was a "reasonable probability" that the result of the trial would have been different if the excluded evidence had been admitted.

[¶ 13] In assessing the prejudicial effect of Kurzman's failure to comply with the rape shield statute and the resulting exclusion of evidence, we must consider the remaining evidence presented and the overall conduct of the trial. *Broadwell,* 2014 ND 6, ¶ 7, 841 N.W.2d 750. The State presented direct evidence from S.O. detailing multiple acts of sexual intercourse with her father and Dr. Miller's testimony regarding S.O.'s physical condition. This Court summarized Dr. Miller's testimony in *Osier,* 1999 ND 28, ¶ 11, 590 N.W.2d 205:

> Dr. Ron Miller, a pediatrician, examined the complainant on November 30, 1994. Dr. Miller testified about the result of the examination:
>
>> This would be considered a non-virginal exam. The hymen was fairly well worn away and the opening of the vagina was significantly larger than would normally be seen.
>
> When asked if he had "develop[ed] a professional opinion after [the complainant's] exam whether she had been involved in sexual intercourse," Dr. Miller testified:
>
>> A. Well, some type of intercourse was involved here to produce this and so, yes, my opinion is that she's probably had intercourse on many occasions. It is not likely that one occasion would do this. Could several do it? Yes, possibly. Is it many more than several? Clinically this would be what would be commonly seen, for example, in a 20–year–old woman who's been married for two years who had intercourse regularly.
>
> Dr. Miller testified "[i]t would take many; probably more than several" acts of "pen[ile]/vaginal intercourse" to "produce this type of physical finding."

This Court concluded that the excluded evidence of additional sexual contact between S.O. and her boyfriend could not account for S.O.'s physical condition:

> Osier provided the trial court with offers of proof, but those offers of proof did not indicate he would be able to

show sexual activity with the young man of a kind and degree sufficient to cause the physical condition observed by Dr. Miller in examining the complainant—"what would be commonly seen, for example, in a 20–year–old woman who's been married for two years who had intercourse regularly."

*Id.* at ¶ 15.

[¶ 14] This Court also addressed Osier's claim that the excluded evidence was admissible to impeach S.O.'s credibility, concluding that any impeachment value of the evidence was merely cumulative:

Osier's counsel told the court he wanted to go into the complainant's sexual activity with the young man because of his testimony in an earlier trial that a week before they had intercourse, "[the complainant] engaged in fellatio upon him putting her mouth on his penis," which counsel deemed significant, because the complainant had "claimed that there was only one occasion where anything did happen whatsoever." Thus, Osier wanted to delve into that matter to impeach the complainant's credibility. However, the impeachment value of that incident was merely cumulative of abundant evidence that the complainant had repeatedly lied to protect the young man. She testified she had wanted to protect him. She testified she told an investigator she had not had sex with anyone other than her father so the young man "wouldn't get in trouble." On cross-examination, the complainant testified that, each time she was asked if she "ever had sex with anybody [she] denied having sex with anybody other than [her] father" because she "didn't want [the young man] to get in trouble." On cross-examination, the complainant said she had lied to doctors about whether she had had sex with anyone. She answered "Yes" to the following ques-

tion on cross-examination: "Q. So it's fair to say that you kept lying until somebody had some physical evidence to show you were lying and then you changed the story?"

*Id.* at ¶ 16.

[¶ 15] We conclude Osier failed to demonstrate there would have been a probable different result in the trial if Kurzman had complied with the rape shield statute and the excluded evidence had been admitted. There was ample evidence supporting the convictions, including S.O.'s direct testimony regarding the sexual acts, the "swirl" marks in the calendar matching the dates Osier would have been home with S.O. while Osier's wife was working, and Dr. Miller's testimony that S.O.'s medical condition was consistent with "many" acts of sexual intercourse. The excluded evidence of additional acts between S.O. and her boyfriend would not account for S.O.'s medical condition as explained by Dr. Miller, and any impeachment value of the evidence was merely cumulative to the abundant evidence admitted which established S.O. had repeatedly lied about her sexual conduct with her boyfriend. The evidence Osier claims was excluded due to counsel's ineffective assistance is not sufficient to carry the heavy burden of establishing that the result of the trial would probably have been different but for counsel's error. Accordingly, Osier has failed to satisfy the prejudice prong of the ineffective assistance of counsel test.

## III

[¶ 16] We have considered the remaining issues and arguments raised by the parties and find they are either unnecessary to our decision or without merit. The order denying Osier's application for post-conviction relief is affirmed.

[¶ 17]   MARY MUEHLEN MARING, S.J., CAROL RONNING KAPSNER, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.

[¶ 18] The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision.   Surrogate Judge MARY MUEHLEN MARING, sitting.