1999 ND 240

Renae DOZIER, Petitioner
and Appellant,

v.

WILLIAMS COUNTY SOCIAL SER-VICE BOARD and North Dakota De-partment of Human Services, Respon-dents and Appellees.

No. 990159.

Supreme Court of North Dakota.

Dec. 22, 1999.

Richard R. LeMay, Legal Assistance of North Dakota, Minot, N.D., for petitioner and appellant.

Jean R. Mullen, Assistant Attorney General, Bismarck, N.D., for respondents and appellees.

SANDSTROM, Justice.

[¶ 1] Renae Dozier appealed from a judgment affirming an order of the Department of Human Services reducing her public assistance benefits because she failed to comply with work requirements. We conclude the Department's findings are supported by a preponderance of the evidence and those findings support imposition of the sanction. We affirm the judgment.

I

[¶ 2] Dozier is a 36–year–old single mother of six children, ages 6 to 15. She has received public assistance benefits for more than ten years. While living in Ward County, Dozier was receiving *Aid to Families with Dependent Children* ("AFDC") benefits. To receive AFDC benefits, Dozier was required to participate in the Job Opportunities and Basic Skills ("JOBS") program, designed to "place participants in nonsubsidized em-

ployment as soon as possible." N.D. Admin. Code § 75–02–01.2–83. However, in June 1997, Dozier received a six-month medical exemption from participation in the JOBS program because she was being treated for depression and anxiety. Dozier moved from Ward County to Williams County in August 1997 to attend school at the University of North Dakota ("UND")-Williston in the Licensed Practical Nurse ("LPN") program.

[¶ 3] In the meantime, sweeping changes were being made in the nation's laws regulating public assistance benefits. Popularly known as "welfare reform," the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193, 110 Stat. 2105 (1996) (codified at 42 U.S.C. § 601 et seq.), abolished the AFDC program and created the Temporary Assistance for Needy Families ("TANF") program. While AFDC had provided cash payments to indigent families based upon national eligibility standards and a uniform federal definition which created an entitlement for recipients, TANF eliminated national eligibility standards and abolished the national entitlement to aid. *See State of Kansas v. United States*, 24 F.Supp.2d 1192, 1194 (D.Kan.1998). One of the purposes of TANF is to end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage. *See* 42 U.S.C. § 601(a)(2); *Cid v. South Dakota Dept. of Social Services*, 1999 SD 108, ¶ 3 n. 3, 598 N.W.2d 887. Under TANF, each state receives a predetermined block of funding to distribute as the state sees fit. *See Walton v. Hammons*, 192 F.3d 590, 591 (6th Cir.1999). In exchange, states must fulfill certain requirements, including meeting specific goals in moving welfare recipients into work and toward self-sufficiency, and complying with a variety of federal regulations. *See State of Kansas*, 24 F.Supp.2d at 1194.

[¶ 4] In North Dakota, TANF is administered through the Training, Education, Employment, and Management ("TEEM") program. *See* N.D.C.C. § 50–09–26. The Department adopted rules for its administration, which became effective July 1, 1997. *See* N.D. Admin. Code ch. 75–02–01.2. North Dakota has retained participation in the JOBS program as a condition for receipt of TEEM benefits. *See* N.D. Admin. Code §§ 75–02–01.2–82 through 75–02–01.2–103.

[¶ 5] Ward County Social Services advised Dozier to contact the Williams County JOBS coordinator when she moved to Williams County, but Dozier did not do so. On September 15, 1997, Dozier met with her Williams County eligibility worker, who questioned the continued validity of her medical exemption from the JOBS program because Dozier was attending college on a full-time basis. Dozier was asked to sign a waiver of confidentiality so social services workers could contact her psychiatrist to determine whether the medical reason given for her unfitness to participate in the JOBS program still existed, but Dozier refused to sign the release. Dozier chose, instead, to not continue the medical exemption. She also refused to participate in the JOBS program. Dozier was sanctioned for her refusal to participate. Dozier did not appeal from the sanction.

[¶ 6] On November 18, 1997, Dozier's TANF file was officially converted to the TEEM program. As a person under a sanction, Dozier was given a new opportunity to participate in the program and receive full benefits under TEEM, if she complied with the JOBS component of the program. Dozier was again referred to the JOBS program. She did not seek a medical exemption, but met with the JOBS coordinator in early January 1998 to complete a job assessment for an employability plan. Dozier indicated she would "try to combine nonapproved school with work experience" and her goal was to complete schooling to become an LPN, but no specific employment goal was identified in the employability plan.

[¶ 7] During the period relevant to this case, JOBS program participants were required to be engaged in an allowed work

activity 20 hours per week. *See* N.D. Admin. Code §§ 75–02–01.2–82(2) and 75–02–01.2–84(1). Because Dozier was attending school for LPN training, the JOBS coordinator allowed Dozier to combine her education with the work requirements. Vocational training can satisfy the work requirements, *see* N.D. Admin. Code § 75–02–01.2–85(g), so the JOBS coordinator thought nurse's training was a viable option. The JOBS coordinator explained to Dozier the vocational education approval requirements, which included submission of a request, along with pertinent information about the training program and test results completed by the participant. *See* N.D. Admin. Code § 75–02–01.2–96. Dozier, however, did not provide the required information, and her request was not considered.

[¶ 8] Later in January 1998, Dozier again met with the JOBS coordinator to further define her JOBS employability plan. At that meeting, the JOBS coordinator decided to allow Dozier to satisfy her work experience by being employed as a peer assistant for 20 hours per week at UND–Williston from January 26, 1998, through June 30, 1998. The peer assistant position would allow Dozier to combine her work requirements under the JOBS program with her schooling so she could continue her LPN education. Dozier signed the employability plan, agreeing to abide by its terms.

[¶ 9] By the end of February 1998, Dozier quit her employment as a peer assistant. On March 10, 1998, the JOBS coordinator notified Dozier to appear at a conciliation meeting on March 19, 1998, to show good cause for her noncompliance with the JOBS program. At the meeting, Dozier told the JOBS coordinator she would not continue with the peer assistant position, because she was a full-time student with six children and did not have time to work. Dozier met later that day with her eligibility worker, who was also designated Dozier's TEEM case manager, and Dozier again refused to comply with the JOBS program work requirements. The case manager also discussed with Dozier the status of her TEEM contract, which must be completed and signed by the participant by the end of the fourth benefit month to remain eligible for any benefits. *See* N.D. Admin. Code § 75–02–01.2–76(1). Dozier signed the TEEM contract during the meeting with her case manager.

[¶ 10] On March 20, 1998, Dozier was issued an advance notice of sanction, giving her until March 31, 1998, to show good cause for her refusal to participate in the JOBS program. Dozier offered no other reasons for her refusal to comply. The sanction at issue in this case was then imposed effective April 1, 1998, reducing Dozier's monthly TEEM benefit about $200 per month for a two-month period ending May 31, 1998, if she chose to cooperate.

[¶ 11] Dozier appealed her sanction, and an administrative law judge ("ALJ") was appointed to hold an evidentiary hearing. The ALJ issued recommended findings and a recommended order upholding the sanction imposed on Dozier for her refusal to comply with the JOBS program work requirements and her failure to show good cause for her refusal to participate. The Department adopted the ALJ's recommended findings and order, and Dozier appealed to district court. The court affirmed the Department's decision.

[¶ 12] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 28–32–15(3). Dozier's appeal to this Court was timely filed under N.D.C.C. § 28–32–21 and N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–32–21.

II

[¶ 13] When a Department decision is appealed to district court and then to this Court, we review the Department's decision, not the district court's ruling.

*Prairieview Nursing Home v. North Dakota Dept. of Human Services,* 1999 ND 142, ¶ 7, 598 N.W.2d 116. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we determine whether the Department's findings of fact are supported by a preponderance of the evidence, whether its conclusions of law are supported by its findings of fact, and whether its decision is in accordance with the law. *Steen v. North Dakota Dept. of Human Services,* 1997 ND 52, ¶ 8, 562 N.W.2d 83. In determining whether the Department's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the Department, but determine whether a reasoning mind could have reasonably determined the factual conclusions were supported by the weight of the evidence. *Walton v. North Dakota Dept. of Human Services,* 552 N.W.2d 336, 338 (N.D.1996). The Department's decisions on questions of law are fully reviewable by this Court. *Wahl v. Morton Co. Social Services,* 1998 ND 48, ¶ 4, 574 N.W.2d 859.

## A

[¶ 14] Dozier contends her eligibility worker and TEEM case manager had no authority to refer her to the JOBS program on November 18, 1997, because she had a valid medical exemption from participation in the JOBS program effective through November 30, 1997.

[¶ 15] Under N.D. Admin. Code § 75–02–01.2–103(1)(a), a person has "good cause" for not participating in the JOBS program work requirements if she is "incapacitated with a physical or mental impairment verified by reliable medical evidence which … prevents the individual from working or participating in any job opportunities and basic skills program or work activity." However, any "parent who engages in activities inconsistent with the claimed incapacity may be determined to not be incapacitated." N.D. Admin. Code § 75–02–01.2–18(5). Dozier's TEEM case manager became concerned about the

continued validity of Dozier's medical exemption because Dozier was capable of attending school on a full-time basis. In September 1997, Dozier refused to sign a release so further medical information could be obtained, and indicated she was no longer interested in claiming a medical exemption. Dozier was also notified she needed "a new medical statement by November 15, 1997 if you are going to claim your exemption again." Again she elected to not claim an exemption. The record shows Dozier simply abandoned her claim for an exemption after her case worker legitimately questioned its continued propriety.

[¶ 16] Moreover, other than Dozier's first sanction, which she did not appeal and cannot attack in this proceeding, *see, e.g., Americana Healthcare v. North Dakota Dept. of Human Services,* 513 N.W.2d 889, 892 (N.D.1994), Dozier has not pointed to any harm resulting to her from being referred to the JOBS program in November 1997. Dozier did not claim entitlement to a medical exemption. The sanction at issue arose from her refusal to comply with the JOBS program after quitting her peer assistant position at the end of February 1998. Furthermore, the sanction was not effective until April 1, 1998.

[¶ 17] We conclude Dozier's referral to the JOBS program in November 1997 provides no grounds for invalidating her sanction in this case.

## B

[¶ 18] Dozier contends she cannot be sanctioned for her failure to comply with the JOBS program work requirements, because her employability plan did not contain an employment goal, did not describe steps she should take to achieve employment, and did not identify necessary supportive services as required by N.D. Admin. Code § 75–02–01.2–89(2).

[¶ 19] After Dozier's first January 1998 meeting with the JOBS coordinator, no employment goal was specified, but the

plan provided Dozier would combine her nonapproved LPN course of study with work experience. At the second meeting in January, the JOBS coordinator and Dozier decided her immediate employment goal was community service work as a peer assistant at UND–Williston, with the work hours adjusted to accommodate her school schedule. However, the JOBS coordinator failed to insert the actual employment goal on the form. We decline to rule the mere failure to transcribe the employment goal on the form invalidates Dozier's employability plan.

[¶ 20] If there were errors in the development of the employability plan, they were to Dozier's benefit. Although the employability plan does not disclose specific steps for Dozier to achieve employment, the JOBS coordinator could have listed one of the occupations for which Dozier was already qualified and required her to terminate her education and immediately begin a full-time job search. *See* N.D. Admin. Code §§ 75–02–01.2–89 and 75–02–01.2–94. Instead, the JOBS coordinator permitted Dozier to continue with her educational goal and allowed her to fulfill her work requirement in a manner compatible with her schooling. The coordinator even encouraged Dozier to take necessary steps to have her LPN education qualified as vocational training, but Dozier failed to provide the necessary documentation. The plan allowed Dozier to complete college rather than seek employment she was already qualified to perform. It is not surprising Dozier signed the employability plan without complaint, because the plan implemented the rules and regulations to her advantage. A party cannot complain about legal errors which redound to their benefit, rather than to their prejudice. *See State v. Dilger*, 338 N.W.2d 87, 96 (N.D.1983).

[¶ 21] Dozier's complaint about the plan's failure to identify needed supportive services is equally unavailing. Dozier was informed about available supportive services, including transportation and child care assistance. Dozier was familiar with these services because she had used them in the past. Dozier specifically said she did not need additional transportation or child support services to participate in the JOBS program. Dozier was already receiving financial assistance for transportation, and she testified her parents provided child care services.

[¶ 22] Under the circumstances of this case, we conclude the employability plan substantially complied with the rules and regulations and provides no basis for reversal of Dozier's sanction.

C

[¶ 23] Dozier argues she cannot be sanctioned under her TEEM contract because her failure to comply with the contract occurred at the end of February 1998, when she quit her peer assistant position, and her contract was not signed until March 19, 1998, after the violation had occurred. Dozier's argument is flawed for two reasons.

[¶ 24] In November 1997, Dozier was informed she would be required to sign within four months, or by March 31, 1998, a TEEM contract to receive TANF assistance or her entire family would lose benefits. *See* N.D. Admin. Code § 75–02–01.2–76(1). During this period, various facets of an appropriate plan were developed. One of Dozier's obligations was to "follow all TEEM employment and training rules." Dozier agreed to meet with her TEEM manager to sign the contract on March 6, 1998, but Dozier did not show up for the meeting. Dozier finally signed the contract on March 19, 1998. Sanctions may be imposed for failure to comply with TEEM contract terms. *See* N.D. Admin. Code § 75–02–01.2–79; 42 U.S.C. § 608(b)(3). Dozier was sent an advance notice of sanction on March 20, 1998, in which she was allowed additional time to show good cause for her refusal to participate in the JOBS program. When she failed to claim good cause during the additional time allotted to her, a sanction was

imposed, effective April 1, 1998. Although Dozier quit her job as a peer assistant before signing the contract, she was still in noncompliance with the contract before any sanction was imposed. Dozier's failure to bring herself into compliance with the terms of the TEEM contract when she was given an opportunity to do so after signing the contract is a violation sufficient to impose the sanction.

[¶ 25] Moreover, a signed TEEM contract is not a prerequisite to imposition of sanctions for failing to comply with mandatory work requirements. Compliance with the JOBS program work requirements was an obligation imposed on Dozier as a condition of her receipt of public assistance benefits under TANF, which arose apart from the terms of the TEEM contract she signed. Under 42 U.S.C. § 607(e)(1), states are required to sanction individuals who refuse to engage in work requirements. *See also* N.D. Admin. Code § 75–02–01.2–79 and 75–02–01.2–80. Failure to sign a TEEM contract is itself specifically listed as a ground for imposition of sanctions under N.D. Admin. Code § 75–02–01.2–80(1)(b). As an adult member of a TEEM household who was receiving TANF benefits, Dozier's obligation to comply with the work requirements arose on and continued from the date she was converted to the TEEM program on November 18, 1997, regardless of when she actually signed her TEEM contract.

[¶ 26] We conclude Dozier's failure to sign her TEEM contract until March 1998 did not protect her from the imposition of sanctions for her refusal to comply with the JOBS program work requirements.

### D

[¶ 27] Dozier contends she could not be properly sanctioned because conciliation was not conducted in compliance with regulations.

[¶ 28] Conciliation is a process used when sanctions may be imposed. N.D. Admin. Code § 75–02–01.2–80(1). Conciliation must be offered before sanctions are imposed, and "there must be a continuing effort to resolve the dispute with the effort coordinated by" the TEEM program manager. N.D. Admin. Code § 75–02–01.2–80(2). Dozier argues the conciliation effort in her case was inadequate because it was too short and was not coordinated by her TEEM manager.

[¶ 29] The record reflects a conciliation notice was sent to Dozier on March 10, 1998, advising her to appear for a conciliation meeting with her JOBS coordinator on March 19, 1998, to show good cause for not complying with the JOBS program work requirements. Dozier's TEEM manager spoke with the JOBS coordinator several times before the formal conciliation effort began, and was familiar with the issues because this was the second proposed sanction for the same reason. The TEEM manager had the JOBS coordinator handle the first meeting, because he had worked directly with Dozier on defining and meeting her JOBS program work requirements. At the meeting, Dozier simply told the JOBS coordinator she would not comply, because she did not have time to work in addition to attending school and taking care of her children.

[¶ 30] Shortly after her meeting with the JOBS coordinator, Dozier met with her TEEM manager and continued to discuss why Dozier refused to comply with the JOBS program work requirements. Dozier again stated she would not comply. The TEEM manager discussed the conciliation efforts with the JOBS coordinator and continued those conciliation efforts by giving Dozier additional time in which to claim good cause for her failure to participate in the program.

[¶ 31] The record shows the TEEM manager coordinated the conciliation process and afforded Dozier every reasonable opportunity to participate in further conciliation. Dozier simply refused. We conclude the conciliation effort was conducted in conformity with N.D. Admin. Code § 75–02–01.2–80.

### III

[¶ 32] We conclude the Department's findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by the findings of fact, and its decision is in accordance with the law.

[¶ 33] The judgment upholding the Department's decision is affirmed.

[¶ 34] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.