2015 ND 62

**Allen Wayne RENCOUNTRE, Petitioner and Appellant**

v.

**STATE of North Dakota, Respondent and Appellee.**

No. 20140197.

Supreme Court of North Dakota.

March 24, 2015.

Benjamin C. Pulkrabek, Mandan, N.D., for petitioner and appellant.

Christene A. Reierson, Assistant State's Attorney, Minot, N.D., for respondent and appellee.

McEVERS, Justice.

[¶ 1] Allen Wayne Rencountre appeals from an order denying his application for postconviction relief. Because the district court did not err in concluding Rencountre failed to establish that he received ineffective assistance of counsel and because the court's error in failing to receive a written criminal record report before sentencing

Rencountre was harmless, we affirm the order.

I

[¶ 2] In the early morning hours of October 10, 2010, a desk clerk at a Minot hotel was shot by an individual. Rencountre was staying at the hotel and the shooting was recorded by the hotel's front desk security camera. Although the desk clerk had not seen the face of the person who shot him, the clerk did see him go out the door and described the shooter as "a bigger person, wearing a dark hoodie and ballcap." Two people who were in the hotel parking lot and had been drinking with Rencountre earlier heard the gunshots. They watched the person they knew as "Al," who they described as "a big boy," walk to his white truck with a "large CAT logo in the rear window" and take "off out of the parking lot 'like a bat out of hell.' "

[¶ 3] Later that morning, a law enforcement officer was driving west of Minot when he noticed a white truck with the letters "CAT" in the rear window coming from behind and passing him at a high speed. The officer pursued the vehicle at speeds up to 115 miles per hour and informed other officers to place spikes in the road ahead. The truck's tires were eventually punctured and the driver, Rencountre, pulled into a gas station in Stanley and stopped. Rencountre remained in the truck holding a pistol in one hand and a bottle of liquor in the other, occasionally taking a drink. One of the officers present negotiated with Rencountre and got him to hand the pistol out the window, but Rencountre remained in the truck drinking out of the bottle, listening to music on the radio, and stating "I shot him ... I shot him ... I shot him!" After his attention was diverted, Rencountre was tased and taken into custody. Rencountre was inter-

viewed by law enforcement officers after he signed a waiver of rights form and was advised of his *Miranda* rights and orally waived them. Rencountre admitted shooting the desk clerk. Although officers asked him whether his "head was clouded," Rencountre responded "I'm good, just pissed off." Rencountre was not tested for blood alcohol concentration.

[¶ 4] Rencountre was charged with attempted murder, a class A felony, and fleeing or attempting to elude a peace officer, a class C felony. The State also filed a special dangerous offender notice against Rencountre to enhance the maximum penalty. Rencountre's retained attorney requested a mental health evaluation of Rencountre be performed at the State Hospital, and the State joined in the request. The evaluation revealed that Rencountre was competent to stand trial and was not suffering from a mental disease or defect at the time of the offense. On April 27, 2011, Rencountre pled guilty under a plea agreement to attempted murder. The charge of fleeing or attempting to elude a peace officer was dismissed as part of the plea agreement, and the district court found Rencountre was a special dangerous offender. Rencountre waived his right to a presentence report and requested that he be sentenced immediately. The State orally advised the court that Rencountre had no prior criminal history. The court sentenced Rencountre to 30 years in prison with 10 years suspended, followed by 5 years of supervised probation.

[¶ 5] Rencountre subsequently filed this application for postconviction relief under N.D.C.C. ch. 29–32.1, alleging he received ineffective assistance from his retained counsel and he is entitled to be resentenced because the district court failed to follow the procedure required by N.D.C.C. § 12.1–32–02(11). Following a hearing, the court denied the application. The court ruled Rencountre had not received ineffective assistance of counsel and, even though the court did not follow the mandates of N.D.C.C. § 12.1–32–02(11), Rencountre was not entitled to be resentenced because he "suffered no prejudice."

## II

[¶ 6] Rencountre argues the district court erred in determining his attorney was not ineffective.

 [¶ 7] In *Osier v. State*, 2014 ND 41, ¶¶ 10–11, 843 N.W.2d 277, we explained:

> Applications for post-conviction relief are civil in nature and are governed by the North Dakota Rules of Civil Procedure. *Broadwell v. State*, 2014 ND 6, ¶ 5, 841 N.W.2d 750; *Bahtiraj v. State*, 2013 ND 240, ¶ 8, 840 N.W.2d 605. The applicant bears the burden of establishing grounds for post-conviction relief. *Broadwell*, at ¶ 5; *Bahtiraj*, at ¶ 8. When an applicant for post-conviction relief claims ineffective assistance of counsel, he must establish both prongs of the *Strickland* test and demonstrate (1) counsel's representation fell below an objective standard of reasonableness, and (2) he was prejudiced by counsel's deficient performance. *Broadwell*, 2014 ND 6, ¶ 7, 841 N.W.2d 750; *Dahl v. State*, 2013 ND 25, ¶ 8, 826 N.W.2d 922; *see Strickland v. Washington*, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact which is fully reviewable on appeal. *Kinsella v. State*, 2013 ND 238, ¶ 4, 840 N.W.2d 625; *Bahtiraj*, at ¶ 8.
>
> To meet the prejudice prong of the *Strickland* test, the defendant bears the heavy burden of establishing a reason-

able probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Dahl*, 2013 ND 25, ¶¶ 8, 15, 826 N.W.2d 922; *Coppage v. State*, 2013 ND 10, ¶ 12, 826 N.W.2d 320. To meet this burden the defendant must prove not only that counsel's assistance was ineffective, but must demonstrate with specificity how and where trial counsel was incompetent and must specify the probable different result if trial counsel had not performed incompetently. *Kinsella*, 2013 ND 238, ¶ 6, 840 N.W.2d 625; *Dahl*, at ¶ 8; *Coppage*, at ¶ 12. We have explained that, "[u]nless counsel's errors are so blatantly and obviously prejudicial that they would in all cases, regardless of the other evidence presented, create a reasonable probability of a different result, the prejudicial effect of counsel's errors must be assessed within the context of the remaining evidence properly presented and the overall conduct of the trial." *Broadwell*, at ¶ 7 (quoting *Coppage*, at ¶ 21). Courts need not address both prongs of the *Strickland* test, and if a court can resolve the case by addressing only one prong it is encouraged to do so. *Broadwell*, at ¶ 7.

To establish prejudice in the context of a guilty plea, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lindsey v. State*, 2014 ND 174, ¶ 19, 852 N.W.2d 383 (internal citation omitted).

## A

 [¶ 8] Rencountre argues his attorney should have filed a motion to suppress incriminating statements he made to law enforcement officers because he was intoxicated at the time and if the statements had been suppressed he would have gone to trial on the charges.

 [¶ 9] To bring a successful ineffective assistance of counsel claim based on an attorney's failure to file a pretrial suppression motion, the defendant must prove that he would have prevailed on his motion to suppress and that there is a reasonable probability a successful motion would have affected the outcome of the trial. *See Kinsella v. State*, 2013 ND 238, ¶ 9, 840 N.W.2d 625; *Roth v. State*, 2007 ND 112, ¶ 10, 735 N.W.2d 882. Rencountre's attorney testified that they discussed filing a motion to suppress, but he did not do so for two reasons. First, the attorney was concerned about the voluntary statements made by Rencountre in Stanley before law enforcement officers attempted to question him and seek a waiver of rights. *See, e.g., State v. Syvertson*, 1999 ND 134, ¶ 19, 597 N.W.2d 652 ("[I]f a defendant at first makes a statement voluntarily, without actual coercion, a subsequent voluntary statement, made after receiving *Miranda* warnings and voluntarily waiving those rights, is untainted and admissible evidence."). The attorney testified he could not tell from the recording of the interview made by law enforcement officers whether Rencountre was intoxicated and a motion to suppress "could have gone either way."

[¶ 10] Second, the attorney testified that even if a motion to suppress the statements would have been successful, there nevertheless would have been "overwhelming evidence" to convict Rencountre. Although Rencountre points out that the desk clerk did not actually see the person who shot him, the surveillance video captured the shooting. The attorney testified the "video clearly shows Mr. Rencountre or someone looking like Mr. Rencountre walking into the lobby of the hotel, leveling a pistol at the night clerk and pulling the trigger numerous times." There were also witnesses in the hotel parking lot who, after hearing shots, saw Rencountre leave

at a high speed in his white truck with the "CAT logo," the same white truck in which he was captured by law enforcement officers after surrendering a pistol.

[¶ 11] We agree with the district court that Rencountre has not established his attorney's failure to file a motion to suppress was deficient performance or that there was a reasonable probability he would not have pled guilty had the motion been filed.

B

[¶ 12] Rencountre argues he received ineffective assistance of counsel because his attorney did not request a second mental health evaluation.

[¶ 13] Rencountre testified that he asked his attorney to arrange for a second evaluation and that the attorney advised him a second opinion was not possible. Rencountre's attorney testified that he could not recall whether Rencountre asked him to arrange for a second evaluation, but if he had the attorney would have done so "[i]f I felt it was warranted." First, a criminal defendant has no "right to shop for a psychiatrist at public expense until he finds one who will support his theory of the case." *State v. Norman*, 507 N.W.2d 522, 524 (N.D.1993). Second, Rencountre must "show[ ] that a second evaluation would have benefited him or that the result of the proceedings would have been different if he had received another evaluation." *Johnson v. State*, 2005 ND APP 8, ¶ 12, 700 N.W.2d 723. Here, the district court observed:

Rencountre testified and now argues that [his] attorney ... wrongly advised him that he could not obtain a second opinion regarding competency. He argues that a second opinion might have been different from the first opinion. A second examiner might have concluded that Rencountre was suffering from some PTSD blackout, or some other temporary trauma which might have excused his conduct. He states that if he would have had this second opinion, he would have insisted on going to trial.

Rencountre's arguments and testimony are nothing more than self-serving statements, and wishful thinking. His position requires the Court to accept first that a second opinion would have been different from the first opinion. Other than Rencountre's wishful thinking, there is nothing to support this first premise. Rencountre has not offered any medical or psychological records from any time before, or after his guilty plea which would lend any credence to the possibility that a second opinion would have been different from the first opinion.

Because Rencountre has failed to establish a reasonable probability that a second evaluation would have led to a different result, we agree that his attorney's failure to seek a second evaluation did not constitute ineffective assistance of counsel.

[¶ 14] We conclude the district court did not err in determining Rencountre was not denied effective assistance of counsel.

III

[¶ 15] Rencountre argues he is entitled to be resentenced because the district court failed to follow the procedure required by N.D.C.C. § 12.1–32–02(11) when he pled guilty.

[¶ 16] Section 12.1–32–02(11), N.D.C.C., provides:

Before sentencing a defendant on a felony charge under section 12.1–20–03, 12.1–20–03.1, 12.1–20–11, 12.1–27.2–02, 12.1–27.2–03, 12.1–27.2–04, or 12.1–27.2–05, a court shall order the department of corrections and rehabilitation to conduct a presentence investigation and to pre-

pare a presentence report. A presentence investigation for a charge under section 12.1–20–03 must include a risk assessment. A court may order the inclusion of a risk assessment in any presentence investigation. *In all felony or class A misdemeanor offenses, in which force, as defined in section 12.1–01–04, or threat of force is an element of the offense or in violation of section 12.1–22–02, or an attempt to commit the offenses, a court, unless a presentence investigation has been ordered, must receive a criminal record report before the sentencing of the defendant. Unless otherwise ordered by the court, the criminal record report must be conducted by the department of corrections and rehabilitation after consulting with the prosecuting attorney regarding the defendant's criminal record. The criminal record report must be in writing, filed with the court before sentencing, and made a part of the court's record of the sentencing proceeding.*

(Emphasis added).

[¶ 17] The underscored language of N.D.C.C. § 12.1–32–02(11) was enacted by the Legislature in 1995 as part of a "tough on crime" bill. *See* 1995 N.D. Sess. Laws ch. 136, § 3; *Hearing on H.B. 1218 Before the House Judiciary Committee,* 54th N.D. Legis. Sess. (Jan. 24, 1995) (testimony of Sen. Donna Nalewaja). At the time, some defendants were sentenced either without any prior criminal history checks whatsoever or by checks of only "a state rap sheet" that did not reveal out-of-state criminal histories, and the defendants' complete criminal histories were not discovered by Department of Corrections staff until they were incarcerated. *Hearing on H.B. 1218 Before the House Judiciary Committee,* 54th Legis. Sess. (Jan. 24, 1995) (written testimony of Elaine Little, Director of Department of Corrections and Rehabilitation) (written testimony of Jackie Jensen, Parole Officer). Proponents of the legislation argued that the change in the law was necessary because:

1. The system relies on a system that has been in place since 1965 and has not been effective. (See example of NDCC 12–60.)

2. The system relies on incomplete information found in the State Criminal History database. (See example of the errors.)

3. Plea agreements are accepted by the Court that would not be accepted with the report.

4. Unnecessary court time is spent on returning offenders to court as a result of poorly thought-out plea agreements.

5. Victim concerns are routinely overlooked.

6. The public will eventually demand mandatory sentences which will remove all discretion from within the system.

7. The public is placed at greater risk.

*Hearing on H.B. 1218 Before the House Judiciary Committee,* 54th Legis. Sess. (Jan. 24, 1995) (written testimony of Warren Emmer, Director of Parole and Probation Division). The requirement of a written, or "hard copy," of the criminal record report was intended to "assure[ ] that the information will be a permanent part of the record rather than an oral statement during the sentencing." *Hearing on H.B. 1218 Before the House Judiciary Committee,* 54th Legis. Sess. (Jan. 24, 1995) (testimony of Cynthia Feland, North Dakota State's Attorneys' Association). Section 12.1–32–02(11), N.D.C.C., is primarily intended for the benefit or protection of the State and the public, not for the benefit of a defendant.

[¶ 18] It is unclear from the record whether the State engaged in the thorough criminal records check envisioned by N.D.C.C. § 12.1–32–02(11) before orally informing the district court that Rencountre had no prior criminal history. If the State did not do so, and a more thorough check would have revealed a criminal record, the error would have inured to Rencountre's benefit, and a "party cannot complain about legal errors which redound to their benefit, rather than to their prejudice." *Dozier v. Williams Cnty. Soc. Serv. Bd.*, 1999 ND 240, ¶ 20, 603 N.W.2d 493; *see also State v. Dilger*, 338 N.W.2d 87, 96 (N.D.1983). Moreover, the district court judge in this postconviction proceeding is the same judge who presided over Rencountre's sentencing in 2011. The court acknowledged that it did not comply with N.D.C.C. § 12.1–32–02(11) in sentencing Rencountre, and further found that it "relied upon information which everyone agrees was the correct information, albeit not in the form of a written report." The court reasoned:

> The relief requested by Rencountre in his petition for post-conviction relief is that he be returned to the court for re-sentencing with the appropriate written record. To what end? To re-sentence with the same information, except this time one piece of information will be in a written format? The substance of the written information will be unchanged from the information given to the Court verbally in the prior proceeding.
>
> There is no purpose to a re-sentencing. No wrong information will be righted. Rencountre has suffered no prejudice. The law respects form less than substance. Section 31–11–05(19), NDCC. The law neither does nor requires idle acts. Section 31–11–05(23), NDCC. Bringing Rencountre back for re-sentencing merely because a piece of paper, containing the same information that was provided to the Court verbally, was not filed is an exaltation of form over substance. Bringing him back for re-sentencing so that a piece of paper can be filed is an idle act.

[¶ 19] Under N.D.R.Crim.P. 52(a), courts must disregard "[a]ny error, defect, irregularity or variance that does not affect substantial rights," and "[w]e have consistently held a defendant must show he is prejudiced by a court's error in a rule 52(a) harmless error analysis." *Wilson v. State*, 2013 ND 124, ¶ 15, 833 N.W.2d 492. Insofar as Rencountre is concerned, we conclude the district court's error in failing to require a written criminal record report before sentencing him was harmless.

### IV

[¶ 20] The district court did not err in dismissing Rencountre's application for postconviction relief. The order is affirmed.

[¶ 21] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.