2016 ND 101

**Ronald Scott THOMPSON, Plaintiff and Appellant**

v.

**STATE of North Dakota, Defendant and Appellee.**

No. 20150157.

Supreme Court of North Dakota.

May 26, 2016.

94

Lee M. Grossman, Fargo, N.D., for plaintiff and appellant; submitted on brief.

Richard J. Meurin, Assistant State's Attorney, Burleigh County State's Attorney's Office, Bismarck, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Ronald Scott Thompson appeals an order denying his application for post-conviction relief. Thompson argues the district court clearly erred because he received ineffective assistance of counsel. We reverse and remand to the district court for analysis under the *Strickland* test.

I

[¶ 2] In 1991 Thompson was charged with gross sexual imposition and received a court appointed defense lawyer. In 1992 Thompson pled guilty and was sentenced to a ten year prison term with three years suspended. Thompson completed his sentence and the term of probation has expired. In 2012 Thompson applied for post-conviction relief, claiming ineffective assistance of counsel and requesting dismissal of the conviction. Thompson alleged his counsel failed to competently prepare his defense, obtain an independent DNA test, adequately investigate the victim, hire a private investigator and develop a tactical trial strategy.

[¶ 3] A hearing was held in May 2013. Thompson testified that in 1992 his attorney told him there was DNA evidence "against" him but he did not receive a copy of the DNA test results. Thompson testified he requested his attorney hire an independent DNA examiner but his attorney told him they could not afford one. Thompson testified he spoke with his attorney about hiring a private investigator to locate three alibi witnesses but there was a "funding issue again." Thompson testified he did not commit the crime but his attorney advised him to plead guilty because of the DNA evidence. Thompson testified he changed from a plea of not guilty to a plea of guilty one or two weeks after his attorney told him of DNA evidence.

[¶ 4] Thompson's attorney testified he no longer has the file for Thompson's case due to the time that has passed. Thompson's attorney testified he recalled seeing a DNA report implicating Thompson. He did not recall showing the report to Thompson or to what percentage probability Thompson was a match. Thompson's attorney testified he did not remember Thompson asking to hire an independent DNA examiner, a private investigator or providing information about alibi witnesses. Thompson's attorney testified his practice would have been to ask the court for additional funds if he believed the case warranted independent DNA analysis or a private investigator. Thompson's attorney testified that if the DNA evidence had come back without a match, the case probably would have been dismissed or "we would have definitely gone to trial."

[¶ 5] Thompson requested the district court hold the case open to allow time to obtain additional evidence. Thompson wished to contact the Federal Bureau of

Investigation to obtain a copy of the DNA test. In June 2013 the district court ordered the FBI to determine if a DNA sample had been examined in this case. In September 2014 Thompson's current attorney reported to the district court the FBI had examined its records and none showed a DNA sample having been received or analyzed in this case in 1991 or 1992. Thompson's current attorney reported the FBI had not, and apparently would not, provide a written statement to that effect.

[¶ 6] A status conference was held in December 2014. According to the district court order, the parties agreed the lack of FBI records supported a conclusion that a DNA test was not performed. The district court found Thompson failed to establish a reasonable probability that, but for the attorney's errors, the result in his case would have been different. The district court found that sufficient evidence existed to support a finding of guilt without a DNA test result. Accordingly, the district court held Thompson failed to demonstrate he was entitled to post-conviction relief. Thompson appeals.

## II

[¶ 7] Thompson argues he is entitled to post-conviction relief because he received ineffective assistance of counsel when he pled guilty in 1992. "The district court's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a)." *Tweed v. State*, 2010 ND 38, ¶ 15, 779 N.W.2d 667 (citing *Laib v. State*, 2005 ND 187, ¶ 11, 705 N.W.2d 845).

"A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake as been made." *Heckelsmiller v. State*, 2004 ND 191, ¶ 5, 687 N.W.2d 454. "Questions of law are fully reviewable on appeal of a post-conviction proceeding." *Greywind v. State*, 2004 ND 213, ¶ 5, 689 N.W.2d 390. Whether a petitioner received ineffective assistance of counsel is a mixed question of law and fact, fully reviewable on appeal. *Sambursky v. State*, 2008 ND 133, ¶ 7, 751 N.W.2d 247.

[¶ 8] To establish his claim of ineffective assistance of counsel Thompson's burden was twofold. First, Thompson must prove his counsel's performance was defective. *State v. McLain*, 403 N.W.2d 16, 17 (N.D.1987); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, he needed to show his defense was prejudiced by the proven defects. *Id.* "If it is easier [for the court] to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice, that course should be followed." *Roth v. State*, 2007 ND 112, ¶ 9, 735 N.W.2d 882 (citing *Wright v. State*, 2005 ND 217, ¶ 11, 707 N.W.2d 242).

[¶ 9] Thompson limits his argument on appeal to claiming his counsel was ineffective because his attorney relied on statements the State's Attorney made that a DNA test was conducted and the results "were against" him. Thompson claims his attorney's failure to obtain a copy of the DNA report fell below an objective standard of reasonableness and prejudiced him.

[¶ 10] The district court denied Thompson's post-conviction relief on the basis of the second prong.

"To meet the prejudice prong of the *Strickland* test, the defendant bears the heavy burden of establishing a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. To meet this burden, the defendant must prove not only that counsel's assistance was ineffective, but must demonstrate with specificity how and where trial counsel was incompetent and must specify the probable different result if trial counsel had not performed incompetently. We have explained that, unless counsel's errors are so blatantly and obviously prejudicial that they would in all cases, regardless of the other evidence presented, create a reasonable probability of a different result, the prejudicial effect of counsel's errors must be assessed within the context of the remaining evidence properly presented and the overall conduct of the trial. Courts need not address both prongs of the *Strickland* test, and if a court can resolve the case by addressing only one prong it is encouraged to do so." *Rencountre v. State*, 2015 ND 62, ¶ 7, 860 N.W.2d 837 (internal citations and quotation marks omitted).

[¶ 11] In the context of a guilty plea the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lindsey v. State*, 2014 ND 174, ¶ 19, 852 N.W.2d 383 (internal citations and quotation marks omitted). "The defendant may only attack the voluntary and intelligent character of the guilty plea." *Id.* at ¶ 17 (internal quotation marks omitted). Withdrawal of a guilty plea is allowed when necessary to correct a manifest injustice. *Moore v. State*, 2013 ND 214, ¶ 10, 839 N.W.2d 834.

[¶ 12] The district court found Thompson failed to show a reasonable probability a jury would not have returned a guilty verdict had Thompson not pled guilty prior to trial. However, in the context of a guilty plea, the appropriate standard to apply in an ineffective assistance of counsel claim is whether there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lindsey*, 2014 ND 174, ¶ 19, 852 N.W.2d 383. The district court's order is silent regarding whether a reasonable probability exists Thompson would have insisted on going to trial but for his attorney's statement there was DNA evidence "against" him. Because the district court did not answer whether Thompson would not have pled guilty but for the alleged misconduct of his attorney, post-conviction relief was denied using the wrong legal standard.

[¶ 13] Because the standard used by the district court to analyze the second prong of the *Strickland* test was an error of law, reversal and remand is required. On remand, the district court must make findings regarding whether a reasonable probability exists that, but for the alleged errors, Thompson would not have pled guilty and would have insisted on going to trial. If the district court finds a reasonable probability Thompson would have insisted on going to trial, it also must make findings on the first prong of the *Strickland* test. If the district court finds no reasonable probability Thompson would have insisted on going to trial, post-conviction relief may be denied without examining prong one.

### III

[¶ 14] We reverse and remand to the district court for appropriate analysis under the *Strickland* test.

[¶ 15] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 16] I agree with and have signed the opinion written for the Court by Justice Crothers. I write separately to note that despite the delay in this case, involving some twenty years before Thompson sought post-conviction relief, our opinion contains no direct analysis of that delay. The petition for post-conviction relief was filed before the amendments to N.D.C.C. § 29–32.1–01 which, with certain exceptions, limited post-conviction relief to those petitions filed within two years of the date the conviction becomes final. But, because the petition was filed before the effective date of the amendments, those amendments are not applicable. However we have held that laches, the delay or lapse of time in commencing an action that works a disadvantage or prejudice to the adverse party because of a change in conditions during the delay, is an affirmative defense the State may raise in defending post-conviction relief applications. *Peltier v. State*, 2015 ND 35, ¶ 27, 859 N.W.2d 381 (quoting *Johnson v. State*, 2006 ND 122, ¶ 8, 714 N.W.2d 832). As an affirmative defense, laches must be raised by the State or the defense is waived. *Lehman v. State*, 2014 ND 103, ¶ 8, 847 N.W.2d 119. The State, for reasons not apparent on the face of the record before us, did not raise laches as an affirmative defense.

[¶ 17] GERALD W. VANDE WALLE, C.J.

SANDSTROM, Justice, concurring and dissenting.

[¶ 18] I agree with the majority that the district court used the wrong test for the second prong of the *Strickland* analysis and if on remand the district court finds no reasonable probability Ronald Thompson would have insisted on going to trial, post-conviction relief may be denied on that basis.

[¶ 19] I write separately to note, as I explain below, there is no stipulation and no competent evidence in the record to establish prong one of the *Strickland* test—that is, ineffective assistance of counsel. Therefore, as I further explain below, it would be proper to affirm the district court's denial of post-conviction relief, and I would do so.

I

[¶ 20] In 1991 Thompson was charged with gross sexual imposition. In 1992 he pled guilty and admitted he pulled a woman from her shower and forced her to perform oral sex. He was sentenced to ten years' imprisonment with three years suspended. He later sought to withdraw his guilty plea because the district court's sentence exceeded the State's recommendation. The court denied this request. Thompson appealed his sentence, and we affirmed. *State v. Thompson*, 504 N.W.2d 315 (N.D.1993).

[¶ 21] In 2012 Thompson applied for post-conviction relief, claiming ineffective assistance of counsel. He alleged his counsel failed to prepare his defense competently, failed to ask a qualified expert to conduct an independent DNA test, failed to ask a qualified expert to investigate all reports and statements made by the victim and question everyone who had contact with the victim, failed to hire a private investigator, and failed to make a tactical trial strategy. The State moved for summary dismissal. Although Thompson provided nothing to defeat the State's request after being put on his proof to do so, the court denied the request.

[¶ 22] Both the State and the defense attorney had destroyed their files, and this became a classic case of laches—staleness—but the State did not raise the de-

fense of laches. This application was filed before the effective date of the post-conviction relief law amendments that would today bar this claim. *See* N.D.C.C. § 29–32.1–01(2) (2013).

[¶ 23] Although the May 2013 hearing was the time for Thompson to prove his claim on the five grounds he alleged in his application for post-conviction relief, it turned into a fishing expedition for an allegedly missing DNA report. This "missing" report was not an issue alleged by Thompson in his application. None of the five grounds actually alleged by Thompson were established. When it turned out that both the State and defense files no longer existed—a result of Thompson's waiting twenty years to seek post-conviction relief—Thompson turned his argument to the premise that the report may never have existed. During the hearing, Thompson's trial attorney was asked about the DNA report. He testified he believed that he recalled having seen it but his file had been destroyed and he did not have it. For some reason, the district court gave Thompson sixty days to develop new evidence and issued an order that the FBI turn over the report. The sixty days, without explanation, stretched into a year and a half.

[¶ 24] After the May 2013 hearing, the record reflects a June 3, 2013, order to the FBI signed by Judge Anderson, but there is no record of its having been served or otherwise transmitted to the FBI.

[¶ 25] Nothing else appears in the record until an August 11, 2014, letter from Thompson to Judge Anderson complaining about the lack of contact from his lawyer, Kent Morrow. On September 4, 2014, Judge Anderson, in a handwritten order, directed counsel to provide a status update "in light of Mr. Thompson's letter." In a September 9, 2014, letter, Attorney Morrow told the judge, "Since the last hearing

... I have written to and communicated with the FBI to see if they had any records of the DNA samples having been received or being analyzed." He said he had no written report. On October 10, parties were given notice of the hearing to be held on December 11, 2014.

[¶ 26] At the December 2014 hearing, Thompson's lawyer did not have any competent evidence that the DNA report did not exist, but told the court that he had talked on the phone to a "Judy" at the FBI who said they didn't have such a report. The assistant state's attorney told the court that she had called the FBI and was told the same thing. While the State said it would agree that when the assistant state's attorney contacted the FBI herself "she [someone at the FBI] indicated she did not have a report," the State also said it was not "willing to concede they didn't do any testing." In its order, the court said the defense attorney "informed the court that he had repeatedly requested that the FBI" provide a written certification and "he had requested the State stipulate that no DNA test had been performed," but the State would not stipulate to that.

[¶ 27] The court then appears to have assumed there was never a report. It nevertheless found the evidence was sufficient to convict Thompson without DNA evidence, and therefore the district court denied post-conviction relief.

## II

[¶ 28] On appeal, Thompson argues he received ineffective assistance of counsel at the trial court stage when he entered a guilty plea based on trial counsel's unprofessional errors.

[¶ 29] Post-conviction relief proceedings are civil in nature and governed by the North Dakota Rules of Civil Proce-

dure. *Moore v. State*, 2007 ND 96, ¶ 8, 734 N.W.2d 336. The petitioner bears the burden of establishing grounds for post-conviction relief. *Id.* The district court's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless clearly erroneous under N.D.R.Civ.P. 52(a). *Id.* To show ineffective assistance of counsel, the petitioner must show his counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Whether a petitioner received ineffective assistance of counsel is a mixed question of law and fact, fully reviewable on appeal. *Sambursky v. State*, 2008 ND 133, ¶ 7, 751 N.W.2d 247.

[¶ 30] "When a defendant pleads guilty on the advice of counsel, the defendant may only attack the voluntary and intelligent character of the guilty plea." *Lindsey v. State*, 2014 ND 174, ¶ 17, 852 N.W.2d 383 (internal quotation marks omitted). Unless a defendant can prove "serious derelictions" on the part of his attorney that kept a plea from being knowingly and intelligently made, the defendant will be bound by that guilty plea. *Damron v. State*, 2003 ND 102, ¶ 13, 663 N.W.2d 650 (citing *McMann v. Richardson*, 397 U.S. 759, 774, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). "In criminal cases, the defendant has the burden to present evidence to overcome the presumption that defense counsel is competent and adequate, and to do so, the defendant must point 'to specific errors made by trial counsel.'" *Damron*, at ¶ 13 (quoting *State v. Slapnicka*, 376 N.W.2d 33, 36 (N.D.1985)).

## A

[¶ 31] Thompson argues his counsel, Michael Hoffman, was ineffective because he did not obtain a copy of the DNA report and show it to Thompson and he simply relied on the word of the prosecutor regarding the results of the DNA analysis. He claims Hoffman's failure to obtain a copy of the DNA report fell below an objective standard of reasonableness and prejudiced him.

## B

[¶ 32] The district court denied Thompson post-conviction relief on the basis of the second prong of the *Strickland* test.

[¶ 33] As the majority correctly says, the second prong of the *Strickland* test is satisfied in the context of a guilty plea if the defendant shows "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Ernst v. State*, 2004 ND 152, ¶ 10, 683 N.W.2d 891. "The petitioner 'must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Bahtiraj v. State*, 2013 ND 240, ¶ 16, 840 N.W.2d 605 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)). This requires an examination and prediction of the likely outcome of a possible trial. *Hill v. Lockhart*, 474 U.S. 52, 59–60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). "Under the *Strickland* test, the potential strength of the state's case must inform the court's analysis, when determining prejudice *inasmuch as a reasonable defendant would surely take it into account.*" *Bahtiraj*, at ¶ 17 (emphasis added).

[¶ 34] Here the district court found Thompson failed to show a reasonable probability that a jury would not have returned a guilty verdict had Thompson not pled guilty prior to trial. While the district court analyzed whether there was

enough evidence to sustain a guilty verdict from a jury, the court's order is silent regarding whether there is a reasonable probability Thompson would not have pleaded guilty and would have insisted on going to trial. The appropriate standard to apply in an ineffective assistance of counsel claim in the context of a guilty plea is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Bahtiraj,* 2013 ND 240, ¶ 15, 840 N.W.2d 605. The correct standard is whether Thompson would not have pled guilty but for this "misconduct" by his defense lawyer. The district court did not answer this question and used the incorrect legal standard when it denied post-conviction relief.

### C

[¶ 35] While the majority reverses and remands for the district court to appropriately analyze the second prong of the *Strickland* test, we may affirm the district court on any ground before it. *See First Nat'l Bank of Belfield v. Burich,* 367 N.W.2d 148, 154 (N.D.1985) ("A correct outcome will not be set aside merely because the trial court assigned an incorrect reason for its decision . . . .").

[¶ 36] Focusing on the first prong of the *Strickland* test, Thompson's argument hinged on whether there had been a DNA report in 1992. The district court, at least for the purposes of its analysis, appears to have assumed there never had been a DNA test or report.

[¶ 37] The party seeking post-conviction relief must establish the grounds for relief. *Chisholm v. State,* 2015 ND 279, ¶ 7, 871 N.W.2d 595. Here Thompson had the burden to establish ineffective assistance of counsel. Thompson argues lawyer Hoffman provided ineffective assistance of counsel when he told Thompson

the results of a DNA lab report without personally having seen the lab report. The proof that counsel did not see the report is the contention that there never was a DNA report. To establish this claimed misrepresentation that the DNA report existed, Thompson needed to prove not that the DNA report does not exist today but that the DNA report did not exist in 1992.

[¶ 38] The district court said, "Both parties agreed that the lack of records at the FBI would support a conclusion that the DNA test had never been performed."

[¶ 39] It is true that the apparent non-existence of the report today may support the premise, but it does not establish the factual conclusion that the DNA test had never been performed and a report had never been generated. A careful review of the record reflects that the State *never agreed* that lack of records at the FBI supports the conclusion that the DNA testing had never been performed. Thompson never alleged anywhere in his application for post-conviction relief that his counsel failed to obtain a copy of the DNA report. The record provides no evidence of a proper written request to the FBI. The FBI representative apparently would not put in writing—as contemplated by the evidentiary rule N.D.R.Ev. 803(10)—"that a diligent search failed to disclose a public record." There is no competent evidence that an FBI DNA report from twenty years ago would still exist at the present time. That twenty-year delay was the fault of the defendant, who knew nothing more when he filed his application for post-conviction relief than he knew twenty years ago. In addition to Thompson's complete failure of evidentiary proof, the State refused to stipulate there had never been DNA testing or a report, and the competent evidence in the record supports the contrary conclusion. In 1992 the district court issued a search warrant to obtain a sample

of Thompson's blood for DNA testing. The state's attorney requested and secured resetting of the scheduled trial, in part because "certain FBI tests have not been returned." And the defense attorney from twenty years ago testified, "Again, my best recollection is that I recall seeing an FBI report of DNA in this case."

[¶ 40]  The record reflects that Thompson failed to establish ineffective assistance of counsel.

### III

[¶ 41]  Because the nonexistence of the DNA report in 1992 was not established by any competent evidence, ineffective assistance of counsel was not established by Thompson, and I would affirm the judgment of the district court dismissing his application for post-conviction relief.

[¶ 42]   DALE V. SANDSTROM